Argued October 5, decided October 19, 1909.

## STATE v. LA ROSE.

[104 Pac. 299.]

CRIMINAL LAW—EVIDENCE—OTHER OFFENSES.

1. Defendant was charged with having killed deceased, the proprietor of a secondhand store, by striking him with a gas pipe wrapped in newspaper, as deceased turned to show defendant an article for which he had inquired. Sixteen hours before another secondhand dealer had been struck on the head with a rusty iron bar wrapped in newspaper in the same manner, and twenty-four hours after the attack on deceased, defendant entered a Chinese tailor shop with a rusty piece of gas pipe wrapped in a newspaper and hankerchief, and requested to be shown an article of merchandise from one of the shelves. The Chinaman saw the pipe, and, on inquiry, defendant stated he was working for the gas company. As the Chinaman turned to get the article, defendant struck him with the pipe, but the blow failed to stun him, and he pursued defendant, who, when arrested, stated that he thought he had killed the Chinaman, having knocked over a number of his kind, and did not think the Chinaman would be able to identify him. On it becoming known that some one had killed deceased, who was a Jew, defendant stated, "They ought to kill all the God damned Jews." *Held*, that evidence of the assault committed on the Chinaman and on the storekeeper preceding the assault on deceased was admissible in a prosecution for killing deceased.

CRIMINAL LAW—WITNESSES—INDORSEMENT—IDENTITY.

2. The object of placing the names of witnesses on the indictment being only to identify the person who testified before the grand jury, the descrip-

tion of a witness whose true name was "Thomas Kinney" as "Thomas Leondor" was not objectionable where it appeared that the witness was a member of an acrobatic trio, known as the "Leondor Bros. Trio," that he was also known as "Thomas Leondor," and that he was employed in a saloon known as "Leondor Bros. Saloon."

From Multnomah: ROBERT G. MORROW, Judge.

Statement by MR. JUSTICE MCBRIDE.

Defendant, Jack La Rose, was convicted in the circuit court for Multnomah County of the crime of murder in the second degree, committed in the killing of one Hyman Neuman, and appeals to this court.

The evidence introduced by the State tended to show the following facts: On the 11th day of May, 1908, defendant entered the second-hand store of one Max Hermann, and asked to be shown some article on sale. As Hermann turned to procure it, defendant struck him on the head with a rusty iron bar wrapped in a newspaper. After striking the blow, defendant escaped from the store, leaving Hermann in an unconscious condition, with the weapon lying upon the floor near him. The next day, about 16 hours after the assault upon Hermann, deceased, Hyman Neuman, was found in his second-hand store, which was situated within a block from the store of Max Hermann, lying in an unconscious condition upon the floor, wounded upon the head, in a manner similar to Hermann, with a piece of rusty gas pipe, wrapped in a newspaper bearing date of the previous day, lying near him. A step-ladder against the wall and a suitcase on the floor near him indicated that he had probably been taking the case from the shelf when he was assaulted in the same manner as Hermann. Within 24 hours after the assault on Neuman, and within two blocks of the business places of Hermann and Neuman, defendant entered the Chinese tailor shop of one John Chong with a rusty piece of gas pipe, which was wrapped in a newspaper, and further wrapped in a handkerchief, and requested to be shown an article of merchandise from one of the shelves. The wrapping not being

arranged so as to entirely cover the pipe, the Chinaman saw the pipe and asked him what he was doing with it, and he answered that he was working for the gas company. When the Chinaman turned to take down the article, defendant struck him with the pipe, but the blow was a glancing one, and failed to stun him. Defendant then ran out of the store with the Chinaman in pursuit, and was captured within a short distance. When confronted by the Chinaman, he admitted the assault, and made the following statement:

"Yes, you son of a bitch [referring to the Chinaman], I thought I had killed you, but I have knocked over a number of your kind, and I didn't think, when I left you, you would ever be able to come here and identify me."

It was further shown that about 11:30 o'clock of the day upon which Neuman was struck, defendant came into a saloon in the neighborhood of the place of business of deceased in an excited, and apparently intoxicated condition, and said:

"For God's sake, give me a drink of anything. I have just been standing down in front of a second-hand store, and I didn't know whether to go in there and buy a revolver and commit suicide or blow in this ten dollars."

Later, word was brought into the saloon that another Jew had been struck down by the mysterious person called the "gas pipe thug," and defendant said: "They ought to kill all the God damned Jews." About 6 o'clock on the same evening defendant again entered the saloon, and, taking more drinks, drew from his pocket two watches and left them with the bartender. They were identified by relatives of deceased (Neuman) as having been his property and part of his stock on sale in the store. Witnesses were not able to say that the watches were there on the day of the killing, but testified to having seen one there a week before, and the other a month before. One, a lady's small watch, was particularly identified by the person who sold it to Neuman. La Rose

had another watch, which the State does not claim was ever the property of. Neuman. The testimony of the police officers was to the effect that La Rose admitted having these two watches, but claimed that he had bought the lady's watch in San Francisco, and had won the other at a game of pool in a saloon in Portland. He himself testified on the trial that he bought the large watch in San Francisco, and won the small one at pool. The State introduced testimony of police officers tending to show that the employment of weapons, such as were used in the assaults upon Neuman, Hermann, and Chong, was novel and unusual in Portland.

As the jury were the judges of the value and effect of the evidence, it is unnecessary to state the evidence for the defense; the question being whether the evidence adduced by the State was competent, and, if so, whether it was sufficient to justify the verdict.

For appellant there was a brief and oral arguments by *Mr. Jay Upton, Mr. L. W. Humphreys* and *Mr. Haywood H. Riddell.*

For the State there was a brief over the names. of *Mr. George J. Cameron,* District Attorney, *Mr. John J. Fitzgerald,* Deputy District Attorney, and *Mr. John F. Logan,* with oral arguments by *Mr. Fitzgerald* and *Mr. Logan.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. At the beginning of this case we are met by the objection that the court erred in admitting evidence of the assaults upon Hermann and Chong. We think the evidence was properly admitted. Three offenses committed in the same locality, each succeeding the other at short intervals, upon persons engaged in selling articles of merchandise of practically the same character, and in substantially the same manner, with the same kind of a weapon, and that, a novel and unusual one, would suggest to the ordinary reasonable mind that they were the offspring of

the same brain, and were planned and executed by the same person. Perhaps, taken alone, they would not be sufficient to justify a conviction, but, when taken with defendant's statement to Chong that he had "knocked over a number of your kind," his possession of the watches, which had been seen in Neuman's store from a few days to a month·previously, and his contradictory statements as to where he obtained them, we think there was sufficient evidence to justify the verdict of the jury, and the testimony objected to was properly admitted. The admission of this testimony is in harmony with the case of *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892) ; *State* v. *Finch,* 54 Or. 482 (103 Pac. 505) ; *State* v. *Germain,* 54 Or. 395 (103 Pac. 521). The decisions of other courts on this subject are so inharmonious that we do not undertake the task of attempting to reconcile them. The many appeals pending in this court, and the pressing necessity of disposing of its rapidly accumulating business render impracticable an opinion fully discussing every phase in which this subject has been presented in the remarkably able brief submitted by counsel for defendant. While it has been thoroughly considered, we are forced to content ourselves with a bare statement of our conclusions.

2. Another objection urged was the admission of the testimony of Thomas Kinney, who testified before the grand jury under the name of Thomas Leondor. Upon the trial in the circuit court he testified that he was a member of an acrobatic trio known as the "Leondor Bros. Trio," that his true name was Kinney, but that he was also known as Thomas Leondor. It appeared from the testimony that the saloon where he was employed was known as "Leondor Bros. Saloon," and, as it is shown that defendant was in this place much of the time for a day or two before his arrest, it is evident that giving witness a name that he had commonly gone by, and by which the saloon where he was employed was known, did

not in any way mislead the defendant as to his identity; and, the object of placing the name of a witness upon the indictment being only to identify the particular person who testified before the grand jury, any name assumed by him will satisfy the substantial requirements of this statute.

The judgment of the lower court will be affirmed.

AFFIRMED.