Argued April 15, decided May 20, 1913.

# STATE *v.* START.

(132 Pac. 512.)

**Sodomy—Elements.**

1. Under Section 1539, L. O. L., providing that "proof of actual penetration into the body" is sufficient to establish the crime against nature, penetration into the mouth is sufficient to constitute the crime, under Section 2099, L. O. L., providing a penalty for the offense.

**Criminal Law—Evidence—Accomplice.**

2. Where a witness was present in the room where a crime against nature was committed, and made no attempt to interfere, and there were circumstances indicating that he was guarding against interference, it was a question for the jury whether he was aiding and abetting in the commission of the crime so as to be an accomplice, as defined by Sections 1458, 2370, L. O. L., whose testimony must be corroborated as required by Section 1540, L. O. L.

[As to whether it is for the court or the jury to determine if one was an accomplice or not, see note in 98 Am. St. Rep. 161.]

**Criminal Law—Parties to Offense—"Abet."**

3. To "abet" is to countenance, assist, give aid. The word "abet" includes knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in the crime.

[As to accomplices in cases of sodomy, see note in 138 Am. St. Rep. 285.]

**Criminal Law—Evidence—Other Offenses—Sexual Crimes.**

4. In a prosecution for the crime against nature, evidence that the defendant has committed the same offense in the same way with other persons than the one named in the indictment is not admissible under the exception to the rule excluding testimony of other crimes, which permits such testimony, in cases of illicit sexual intercourse, to prove an inclination to commit the act, since that exception is limited to proof of similar crimes between the same parties.

[As to evidence of other offenses to show intent, see note in 105 Am. St. Rep. 991.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

The defendant, Harry A. Start, was convicted of the crime against nature and from the judgment and sentence imposed he appeals.                REVERSED.

For appellant there was a brief over the names of *Mr. Sam M. Johnson* and *Mr. Wilson T. Hume,* with an oral argument by *Mr. Hume.*

For the state there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, *Mr. Frank T. Collier* and *Mr. Robert F. Maguire,* with oral arguments by *Mr. Collier* and *Mr. Maguire.*

Mr. Justice Burnett delivered the opinion of the court.

Mr. Chief Justice McBride and Mr. Justice Eakin dissent.

1. According to the testimony of Rodby, the defendant performed the disgusting act upon him at the time mentioned in the indictment by taking into his mouth the penis of Rodby and sucking the same until a seminal emission ensued. The defendant contends that such an act does not constitute a violation of our statute, providing that, "if any person shall commit sodomy or the crime against nature, either with mankind or beast, such person, upon conviction thereof, shall be punished," etc.: L. O. L., § 2099.

Many precedents are cited by the defendant in support of his theory. They are all traced back to and have their origin in the case of *Rex* v. *Jacobs,* Russ. & R. C. C. 331. The prisoner there was convicted on evidence showing conclusively that he had accomplished the act by force in the mouth of a boy about seven years old, and the question was whether this was sodomy. All that is said in answer to the question in the report of the case follows: "In Easter term, 1817, the judges met and were of opinion that this did not constitute the offense of sodomy, and directed a pardon to be applied for." The authorities cited by the defendant have implicitly followed this *ipse dixit* of the

English court without giving any reason therefor, always controlled solely by the doctrine of *stare decisis,* and often with protests against the authority of the rule.    Although there are no common-law crimes in this state, we must turn to that law for the definition of certain crimes where the meaning thereof is not set forth in our code.    The rule at common law was that: "All unnatural carnal copulation whether with man or beast seem to come under the notion of sodomy": 1 Hawk. P. C. 357.    In the order of nature the nourishment of the human body is accomplished by the operation of the alimentary canal, beginning with the mouth and ending with the rectum.    In this process food enters the first opening, the mouth, and residuum and waste are discharged through the nether opening of the rectum.    The natural functions of the organs for the reproduction of the species are entirely different from those of the nutritive system.    It is self-evident that the use of either opening of the alimentary canal for the purpose of sexual copulation is against the natural design of the human body.    In other words, it is an offense against nature.    There can be no difference in reason whether such an unnatural coition takes place in the mouth or in the fundament—at one end of the alimentary canal or the other.    The moral filthiness and iniquity against which the statute is aimed is the same in both cases.    Each is rightfully included in the true scope and meaning of the common-law definition quoted above from Hawkins.    By far the better reasoning is found in the cases of *State* v. *Whitmarsh,* 26 S. D. 426 (128 N. W. 580); *Herring* v. *State,* 119 Ga. 709 (46 S. E. 876), and others which might be cited.

It is said in Section 1539, L. O. L., that "Proof of actual penetration into the body is sufficient to sustain an indictment for rape or for the crime against

nature.'' No particular opening of the body into which penetration can be made is specified in this section. It follows that the actual penetration of the virile member into any orifice of the human body except the vaginal opening of a female is sufficient for the establishment of the crime in question.

2. The state called as a witness Earl Van Hulen, for the purpose of corroborating the testimony of the witness Rodby. Van Hulen was present at the time the alleged offense was committed with Rodby. Their testimony was to the effect that Rodby met Van Hulen on the street, and asked him to go with him to the office of the defendant to keep an engagement. Arriving there, the two were seated in company with the defendant, who locked the door and immediately began to talk to them about ''queans,'' the significance of which Van Hulen understood. This conversation led up to the act charged in the indictment. He remained seated in the room and watched the performance of the act, testifying substantially that he stayed there because he thought it was better than to go out, and for the reason that if he opened the door and left the room he would be liable to disclose what was going on inside; that he told the defendant he thought it was very daring, and that it was bad enough for two without three in the room. The defendant requested the court to instruct the jury that the witnesses Rodby and Van Hulen were accomplices, and that a conviction could not be had upon such testimony unless corroborated by other evidence. This instruction was refused by the court, which gave instead thereof the following:

''The state has offered the witness Van Hulen as a witness corroborating the testimony of the complaining witness, Fred Rodby. The defendant contends that this man Van Hulen was an accomplice, and that therefore his testimony was not admissible. The court was

unable to agree with the contention of the defendant on that point, and you are now instructed as a matter of law that the witness Van Hulen was not an accomplice of the defendant, and that therefore his testimony may be considered by you as corroborating the testimony of the complaining witness, Rodby."·

It is provided in Sections 1458 and 2370, L. O. L., that "All persons concerned in the commission of a crime whether it be felony or misdemeanor and whether they directly commit the act constituting the crime or aid and abet in its commission though not present, are principals and are to be tried and punished as such."

It is also said in Section 1540 that "A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime and the corroboration is not sufficient if it merely show the commission of the crime or the circumstances of the commission."

3. "To 'abet' is to countenance, assist, give aid. The word 'abet' includes knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in the crime": 1 Words and Phrases, p. 15.

Considering the facts: That the two witnesses went together to the defendant's office to meet an engagement with one of them; that on arriving there nothing else was talked of except what resulted in the crime; that the witness Van Hulen was present without protest, and remained until the consummation of the act without making any effort to stop the commission of the felony, or to do anything to prevent or discourage it—there were circumstances from which the jury could believe, for instance, that he guarded the door to prevent detection, and so that he was at least abetting the commission of the crime, and hence was an accomplice. In *State* v. *Wong Si Sam,* 63 Or. 266 (127 Pac. 683),

the deceased was said to have been murdered in the room of his paramour, a Chinese woman, Oi Sen, who stood by, offered no resistance, and called for no help. This was deemed sufficient to take to the jury the question of whether or not she was an accomplice, and it was held by this court, in an opinion by Mr. Justice BEAN, that if the jury found that she was an accomplice, she must be corroborated in compliance with the statute. Van Hulen in this case appears in a stronger light as an accomplice than did the Chinese prostitute. Under these circumstances the court had no right to assume, and so instruct the jury as a matter of law, that he was not an accomplice. The question should have been left to the jury, under proper instruction, to determine, in the first place, whether Van Hulen was present aiding or abetting in the commission of the crime, and, next, that if so, he should be corroborated by other evidence within the meaning of the statute above quoted.

4. Over the objection and exception of the defendant, the court permitted the state to call several witnesses, who testified that they themselves, at other times, had participated with the defendant in a like action as that described in the indictment. The court in its charge to the jury stated that "This evidence of other similar crimes will be admitted for whatever tendency it may have to show that he, the defendant was in a state of mind that would naturally dispose him to commit the particular crime charged in the indictment with Fred Rodby." The defendant excepted to that instruction. The testimony showed that the transactions disclosed by the other witnesses were entirely disconnected from that with Rodby, and were committed at other times.

It is said in *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892):

"The rule that evidence of crimes other than that charged in the indictment is inadmissible is subject to a few exceptions, speaking of which Mr. Underhill, in his valuable work on Criminal Evidence (section 87), says: 'These exceptions are carefully limited and guarded by the courts, and their number should not be increased.'"

In that same case of *State* v. *O'Donnell*, Mr. Justice MOORE sets down several exceptions to the general rule. He summarizes them as follows:

"(1) If several similar criminal acts are so connected by the prisoner, with respect to time and locality, that they form an inseparable transaction, and a complete account of the offense charged in the indictment cannot be given without detailing the particulars of such other acts, evidence of any or all of the component parts thereof is admissible to prove the whole general plan.

"(2) When the commission of the act charged in the indictment is practically admitted by the prisoner, who seeks to avoid criminal responsibility therefor by relying upon the lack of intent or want of guilty knowledge, evidence of the commission by him of several independent offenses before or after that upon which he is being tried, and having no apparent connection therewith, is admissible to prove such intent or knowledge, which has become the material issue for trial.

"(3) If the facts and circumstances tend to show that the prisoner committed an independent dissimilar crime, to enable him to perpetrate or to conceal an offense, such evidence is admissible against him upon an indictment charging the auxiliary crime, when the intent to perpetrate or conceal such offense furnished the motive for committing the crime for which he is put upon trial."

Neither of these three exceptions apply to this case. There is no testimony here tending in the least to show that the transactions with these several witnesses were

in any way connected one with the other. An illustration of the exception would be where a man was killed by the defendant, who several times before had tried to shoot the deceased in the same manner in which he was shot at the time in question. Under the third exception an illustration would be where a burglar stole tools from a foundry with which to break the safe burglarized. Evidence of the crime could in such circumstances be given to support an indictment for the other. On the trial for burglary the stealing of the tools could be shown as preparation for the crime charged, and on an indictment for larceny of the tools the commission of the burglary with them would supply the motive for stealing them. Motive is that which impels one to do an act. In this case the proof of the crime mentioned with A would furnish no motive for the commission of the same species of felony with B. They are independent transactions, and neither one is the reason for the other.

Mr. Justice MOORE then states a fourth exception: "When a crime has been committed by the use of a novel means or in a particular manner, evidence of the defendant's commission of similar offenses by the use of such means or in such manner is admissible against him, as tending to prove the identity of persons from the similarity of such means, or the peculiarity of the manner adopted by him." That the manner in which the defendant is said to have committed the crime is not a novel one is proved by the fact that for more than 100 years precedents have appeared in the reports where the crime was committed in the same manner by men with other offenders. The question has never been whether the method alleged to have been employed here was unique, but whether it constituted any offense at all. Cases under this exception are those where the crime is characterized by some

· personal peculiarity of the defendant not common to other people. An illustration of this exception is found in cases where a forgery has been committed of documents in which the peculiar writing of the defendant forms a part. Evidence of other writings, although they are forgeries, containing these peculiar earmarks of the defendant's writing may be given in evidence in support of the particular crime charged. This doctrine is illustrated in the case of *State* v. *La Rose,* 54 Or. 555 (104 Pac. 299). There it was shown that within short intervals of time a number of persons had been attacked, and either slain or severely wounded, by a man who invariably used a gaspipe wrapped in cloth or paper. He was positively identified by one of his victims who escaped death at his hands, and this evidence was admitted against him in the trial for murder of another whom he had attacked fatally. His peculiar personal characteristics were therefore admissible to show that he did the act complained of. ·

The last exception noted by Mr. Justice MOORE is: "(5) When a prisoner is charged with any form of illicit sexual intercourse, evidence of the commission of similar crimes by the same parties is admissible to prove an inclination to commit the act for which the accused is put upon this trial." This exception limits illicit commerce among sexes to that between the same parties, and no authority has been cited where this rule is enlarged so as to admit testimony about acts of sexual intercourse with other parties than the one named in the indictment.

In *State* v. *La Page,* 57 N. H. 245, 289 (24 Am. Rep. 69), the doctrine is summarized thus: "(1) It is not permitted to the prosecution to attack the character of the prisoner unless he first puts that in issue by offering evidence of his good character. (2) It is not

permitted to show the defendant's bad character by showing particular acts. (3) It is not permitted to show in the prisoner a tendency or disposition to commit the crime with which he is charged. (4) It is not permitted to give in evidence other crimes of the prisoner, unless they are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances have some bearing upon the issue on trial other than such as is expressed in the foregoing propositions.'' In that case the defendant was on trial upon an indictment charging him with the murder of a young girl while passing over a certain road on her way to school. It was proved, and very properly too, that he had been previously seen about the same place, lurking in the bushes and at times running after school girls on their way to that school, and made various inquiries about different girls passing that way. The theory of the prosecution was that he had committed the murder in an attempt to rape the deceased. Besides the evidence already alluded to, the state was allowed to call another woman, who testified that at some time before the commission of the crime in question he had raped her at an entirely different place in Canada. Sixty pages of the report are devoted to the exhaustive consideration of this case, and for the admission of the testimony about the former rape on the witness mentioned the judgment of conviction was reversed. Summing up on that point, the court says: ''However extreme the case may be, I think it will be found that the courts have always professed to put the admission of the testimony on the ground that there was some logical connection between the crime proposed to be proved other than the tendency to commit one crime as manifested by the tendency to commit the other.''

In *Commonwealth* v. *Snow,* 111 Mass. 411, a witness other than the accomplice who participated in the sodomy mentioned in the indictment was allowed to testify that the defendant attempted to commit the same offense with him; said that it would not hurt, and that he had done it with other boys. Under the peculiar circumstances as disclosed by the other evidence the court admitted that part of the statement to the effect that he had done it with other boys as tending to show a confession of the defendant of the crime charged in the indictment, but said:

"The fact that the defendant attempted to commit, with Emerson, a like offense to that charged in the indictment was not competent by itself. * * It is true, as the defendant contends, that other instances of a like offense committed by the defendant are not admissible to establish his guilt in the particular instance charged. For the same reason, his confession of such other offenses would not be competent."

*Proper* v. *State,* 85 Wis. 630 (55 N. W. 1040), is quoted in some of the cases relied upon by the prosecution here. That was a charge of statutory rape upon Clara O'Brien, a female child under the age of twelve years. A girl named Emma testified on behalf of the state that she and Clara slept together, and one night the defendant came and got into bed with them both and had intercourse with Emma. Commenting upon this testimony the court says:

"A greater latitude of proof as to other like occurrences is allowed in cases of sexual crimes. Upon a prosecution for adultery, evidence of previous acts of improper familiarity, amounting to adultery, between the same persons, was held competent either in corroboration of witnesses for the prosecution, or to show the disposition of the parties to commit the crime. * * We do not suppose that evidence that the defendant had committed adultery or been guilty

* * of familiarity with the girl Emma at another time or place would be competent evidence on the trial of the present issue, but rest our ruling on the ground, already stated, that the act of the defendant in going to the room where both Emma and the prosecutrix were sleeping, and getting in bed with them, was a grossly indecent assault on both.''

The case of *People* v. *O'Sullivan,* 104 N. Y. 481 (10 N. E. 880, 58 Am. Rep. 530), was a case where the defendant was charged with rape of his servant girl. The court allowed evidence of previous attempts to commit the crime upon the prosecutrix, but said:

''In this case it would be incompetent to prove that the defendant had committed, or attempted to commit, rape upon any other woman.''

In the cases of *Scott* v. *People,* 141 Ill. 195 (30 N. E. 329), *Lamb* v. *State,* 66 Md. 285 (7 Atl. 399), *State* v. *Ward,* 61 Vt. 153 (17 Atl. 483), *State* v. *Markins,* 95 Ind. 464 (48 Am. Rep. 733), *People* v. *Skutt,* 96 Mich. 449 (56 N. W. 11), and *People* v. *Jenness,* 5 Mich. 305, the previous attempts and acts mentioned in the indictment were admitted, but in every case without exception they were expressly limited to acts between the same parties.

As said by Mr. Justice GABBERT in *Jaynes* v. *People,* 44 Colo. 535 (99 Pac. 325, 16 Ann. Cas. 787):

''It is not proper to raise a presumption of guilt on the ground that, having committed one crime, the depravity it exhibits makes it likely he (the defendant) would commit another. The reason for the rule is that no person shall be convicted of an offense by proving that he is guilty of another. Evidence of this character tends to create a prejudice in the minds of the jury against the accused, multiplies the issues, and may confuse and mislead the jury.''

In *Coleman* v. *People,* 55 N. Y. 90, Allen, J., enunciates the principle thus:

"A person cannot be convicted of one offense upon proof that he committed another, however persuasive in a moral point of view such evidence may be. It would be easier to believe a person guilty of one crime if it was known that he had committed another of a similar character, * * but the injustice of such a rule in courts of justice is apparent. It would lead to convictions upon the particular charge made by proof of other acts in no way connected with it, and to uniting evidence of several offenses to produce conviction for a single one."

That case is cited with approval in *State* v. *Williams,* a Utah case reported in 36 Utah, 273 (103 Pac. 250), where it was decided that "in a prosecution for rape on a child of ten, evidence of prosecutrix that after the assault had been completed defendant stated that there were other female children that had come to his house with whom he had committed the same offense was inadmissible." Mr. Justice McCarty, who wrote the opinion, comments on the subject thus:

"The statement that he had committed like crimes with other girls in no way tended to elucidate or explain the alleged assault upon the complaining witness. It was a narrative or recital of transactions which were neither directly nor remotely connected with the crime under consideration. The crimes thus sought to be proved were committed on other parties at other times, and were entirely distinct and separate from the specific crime charged in the information, and formed no link in the chain of events leading up to and surrounding the offense, and did not tend in the remotest degree to prove any fact whatever material to the issue. * * We can conceive of no purpose for which this evidence was introduced, unless it was to show a general disposition on the part of the defendant to commit crimes of that character, and thereby in-

crease the probability that he committed the one charged in this case.''

The opinion in the Williams case also refers to *Janzen* v. *People*, 159 Ill. 440 (42 N. E. 862), where the defendant was charged with rape upon his daughter. Evidence that he had also raped another daughter was received over the defendant's objection, but the Supreme Court of Illinois held that such evidence was not admissible.   Again, in *Shaffner* v. *Commonwealth*, 72 Pa. 60 (13 Am. Rep. 649), Mr. Justice AGNEW, quoted with approval by Mr. Justice MOORE of this court in *State* v. *O'Donnell*, 36 Or. 222 (61 Pac. 892), says:

''It is a general rule that a distinct crime, unconnected with that laid in the indictment, cannot be given in evidence against a prisoner.   It is not proper to raise a presumption of guilt on the ground that, having committed one crime, the depravity it exhibits makes it likely he would commit another.   Logically the commission of an independent offense is not proof, in itself, of the commission of another crime.   Yet it cannot be said to be without influence on the mind, for certainly, if one be shown to be guilty of another crime equally heinous, it will prompt a more ready belief that he might have committed the one with which he is charged; it therefore predisposes the mind of the juror to believe the prisoner guilty.   To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor by a connection which shows that he who committed the one must have done the other.''

To admit testimony that the defendant at other times and places, and under wholly disconnected circumstances, had committed like offenses with parties not named in the indictment, all for the purpose of mak-

ing it appear that the accused has the bent of mind adapted to such actions, would cloud the issue and confuse the jury.

The relation of the sexes is so closely allied to all that mankind holds dearest that it is very difficult to get men to think and act with judicial calmness in cases where that relation is violated or debauched. Judges themselves are but human beings like other men, and this largely accounts for the exceptions that have been ingrafted upon the law in respect to sexual crimes. Yet these exceptions, as this court has already said in *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892), should be carefully guarded and not extended, for the law must protect the innocent while it pursues the guilty, so that the rule is, and should be, the same in both instances.

The defendant in this criminal prosecution had the right to "demand the nature and cause of the accusation against him and to have a copy thereof": Oregon Constitution, Art. I, § 11. Here, however, he was in real truth brought to trial upon some half dozen charges, while the indictment gave him information of but one offense. Logically, under the rule announced by the court at the trial, it could make no difference in the principle if the defendant had been acquitted or convicted of the other offenses. They could be still put in evidence to show a criminal propensity on his part, and he compelled to again defend against them. In a large degree the effect of such a proceeding is to "shut the gates of mercy on mankind," so that if but once an individual suffers a lapse of virtue, thenceforward the law will pursue him with the vindictive zeal of a Javert, using a single accusation to wreak upon him the cumulative vengeance of a general inquisition.

The judgment of the Circuit Court is reversed and a new trial ordered.                          REVERSED.

MR. CHIEF JUSTICE McBRIDE delivered the following dissenting opinion:

In my judgment the court did not err in instructing the jury that the witness Van Hulen was not an accomplice. His testimony, in brief, is to the effect: That about the first Sunday in October Rodby told him that he had an appointment with the defendant, and wanted him to accompany him to the defendant's office; that he knew nothing as to the nature of the appointment and nothing as to the relations between Rodby and the defendant; that when they arrived at the office Rodby introduced him to the defendant, and that defendant at once began talking about "queans," meaning persons who practice the crime against nature; that after some conversation on this subject defendant went over and sat by Rodby on a lounge, and finally committed the act charged; that he sat there and looked on, but made no protest; that he did not go out of the room for the reason that he was afraid that if he opened the door some passer-by might see what was going on, and would form a bad impression from seeing him come out under the circumstances.

"An accomplice is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime." "To constitute an accomplice one must be so connected with a crime that at common law he might himself have been convicted either as principal or accessory before the fact." "A person who participates in the moral guilt of a crime, but is not connected therewith in such a way that he could be indicted for the offense, is not an accomplice." See, generally, Words & Phrases, title, "Accomplice," from which the above definitions are taken. There is nothing in any definition that I have been able to find that will include the witness Van Hulen. He did not aid; he did not abet; he did not en-

65 Or.—13

courage; he did not advise; and he did not participate in the offense—and one would have to travel outside the testimony into the realm of speculation and imagination to hold him as such.

The most serious question raised is that relating to the admission of testimony tending to show that defendant had sustained similar criminal relations with other parties. The general rule is that this cannot be done. The authorities on this subject are so well collected in the notes to *People* v. *Molineux,* 168 N. Y. 264 (61 N. E. 286), as re-reported in 62 L. R. A. 193, that I have only to cite the latter publication to indicate the rule and most of its exceptions. I think this case falls within an important exception. It is this: "Where a crime is an unusual crime, committed by unusual means, indicating a peculiar habit or system, evidence of other like offenses committed in the same manner may be admitted": Underhill, Crim. Ev., p. 107; Wharton, Crim. Ev., § 39; *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892); *State* v. *La Rose,* 54 Or. 555 (104 Pac. 299). Every condition of this exception is present in this case. The crime is unusual and unnatural, as its name indicates. Indeed, it was committed in the present instance in so unusual a manner that a strong and plausible argument has been advanced that the facts proved do not constitute the crime charged, and it is evident that we are dealing with an offense not usually committed, and rarely committed in the manner described in the testimony. This narrows the field of investigation to the inquiry, "Who in the community would be likely to commit so unusual a crime in so unusual a manner?" The response naturally is, "Show us a person in the community who has in other instances perpetrated the offense in the same manner, and we will show you the man most likely to have perpetrated this particular offense." Murder, rape and

larceny are common. They are not infrequently asso-
ciated with normal minds, but this offense is uncommon
and abnormal. The mentally normal man is as in-
capable of committing it as the physically normal man
is incapable of carrying away a rail from a railway
track. Let us suppose that a man was indicted for
taking, stealing and carrying away such a rail, and
that there was evidence tending to show that some one
person had committed the theft, would not evidence
that the person on trial was a man of enormous
strength, and that he had frequently carried such bur-
dens on other occasions, be some evidence that he was
the person who carried away the particular rail
charged in the indictment? Standing alone, it would
not be sufficient to convict, but it would be a circum-
stance tending to indicate the probability of his guilt.
It would stand as a single witness tree stands in rela-
tion to a corner stake of a survey. Alone it may be
of small value, but when a second or third witness tree
is found, the location of the corner may become a cer-
tainty. So in the case at bar, it might be said that it
was morally impossible that the defendant, with a good
reputation and engaged in a respectable business, was
morally capable of committing the crime, but the facts
that he had personally committed it with A, B, and C
are so many witness trees indicating the principal fact
that he possessed that abnormal moral nature that was
equal to committing the act charged. It is evident that
with the decay of morals that accompanies increase of
wealth and luxury we are compelled to deal with a com-
paratively new form of crime; the reports of this court
covering a period of 60 years do not reveal a single
instance of its occurrence up to the present year. It
is a crime so unnatural and abhorrent that in the very
nature of things it will be committed in secrecy. To
apply to this new offense the rules applicable to mur-

der, rape and larceny will, in the vast majority of instances, be a grant of immunity to offenders. The rules of evidence are not arbitrary. They are the result of experience with prevailing conditions and the necessities of society. They are the servants, not the masters, of justice and they change as the necessities of society change. Time was when the evidentiary test of the navigability of a stream was whether the tide ebbed and flowed in it, but as civilization advanced to new fields, the rule of evidence changed, so that the evidentiary test of navigation of a stream became the fact that vessels could actually float on its waters. No statute announced this change. It was brought about by new conditions and new necessities. Time was when an assaulted person could not justify under the law of self-defense until he had shown that he had "retreated to the wall," but under new conditions and weapons this rule was dispensed with. So here we have a new method of crime and new conditions, and to apply the archaic rules is like trying to fit a square peg into a round hole. In the days of the common law in England, when more than 160 offenses were punished with death, and cruel and long punishments were inflicted for several hundred minor offenses, and where the accused was not permitted counsel in his defense, courts were inclined to be exceedingly technical in the admission of evidence, but in this age where the presumption of innocence is emphasized at every trial, when the defendant is given double the number of peremptory challenges that is allowed to the state, where he has compulsory process to secure the attendance of witnesses, when he has the privilege of counsel, and is allowed to go upon the stand in his own behalf, the necessity for many of these archaic rules has ceased, and they may well be relegated to the scrap heap of unnecessary judicial machinery. "Where the reason for the rule ceases, the rule ceases."

Another reason for the admission of this testimony is the tendency to show the motive for the association with Rodby by defendant. It might well be contended that the association was either on account of personal friendship or from professional reasons. The fact that other young men about the age of Rodby went to defendant's room at his invitation, for the purpose of committing like offenses, indicates to some extent the motive that might have induced him to so frequently be in company with a person with whom a man in his position in life would not ordinarily associate. For this purpose the evidence was admissible under the authorities already cited. It cannot be denied that the admission of the evidence told strongly against the defendant, not only in the particulars already mentioned, but because it corroborated the testimony of Rodby as to the fact that defendant, apparently as an inducement to him to submit to the act, told him that he committed the same act with other persons. It strengthened the case of the state as to the solicitation by making it clear that the defendant actually had solicited other persons, and that they had yielded to his solicitations. There is no error shown in the record, and the judgment should be affirmed.

MR. JUSTICE EAKIN concurs in this dissent.