Argued June 2, affirmed June 16, 1914.

# STATE *v.* VON KLEIN.*

(142. Pac. 549.)

**Criminal Law—Evidence—Other Offenses.**

1. In a prosecution for polygamy, where a witness, having referred to the plural wife as Mrs. L., stated that she was known also as E. N., the question whether she was the same E. N. who had complained against the defendant charging him with the larceny of $3,300 worth of diamonds was admissible for the purpose of identification and was not objectionable as tending to show another offense.

[As to when evidence of other offenses by defendant is admissible in criminal cases, see notes in 44 Am. Rep. 299; 105 Am. St. Rep. 976.]

**Criminal Law—Evidence—Other Offenses.**

2. In a prosecution for polygamy, where the evidence showed that defendant lived with the plural wife for only a few days, evidence that he stole valuable jewelry from her while living with her was admissible to show motive for the crime charged.

**Criminal Law—Appeal—Assignments of Error—Sufficiency.**

3. An assignment that the trial court erred in sustaining objections to questions to a witness concerning a certain person is too general to raise any question for review.

**Witnesses—Evidence—Hearsay—Newspaper Publications.**

4. In a prosecution for polygamy, cross-examination of a witness as to whether he had read newspaper accounts of the arrest of defendant was properly excluded.

[As to newspaper reports as evidence, see note in 90 Am. Dec. 258.]

**Criminal Law—Evidence—Evidence Given at Former Trial.**

5. Section 1533, L. O. L., makes the rules of evidence in criminal cases the same as in civil cases, except as otherwise specially provided. Section 727 authorizes the testimony of a witness deceased or out of the state or unable to testify, given in a former action, suit, or proceeding between the same parties, relating to the same matter, to be received. Article I, Section 11, of the Constitution, guarantees the accused the right to meet the witnesses face to face. *Held,* that testimony of witnesses out of the state given at a former trial in a prosecution for larceny, the witnesses then being face to

---

*As to evidence of other crimes to show intent, see notes in 62 L. R. A. 214 and 43 L. R. A. (N. S.) 668, 755, 774, 778.

The question of husband or wife as witness against the other in prosecution for polygamy is discussed in a note in 2 L. R. A. (N. S.) 862.                                                   REPORTER.

face with accused, is admissible, so far as relevant, in a subsequent prosecution of the same defendant for polygamy.

> [As to admissibility in criminal case of former testimony of absent witness, see notes in 61 Am. St. Rep. 886; Ann. Cas. 1913C, 464. Same in civil cases, see note in 91 Am. St. Rep. 193.]

**Criminal Law—Competency—Wife of Accused.**

6. Under Section 1535, L. O. L., as amended by Laws of 1913, page 351, providing that in criminal actions, where the husband is the party accused, the wife shall be a competent witness but shall not be compelled or allowed to testify unless by consent of both parties, provided that in criminal actions for polygamy the wife shall be a competent witness as to the fact of marriage, an objection to the testimony of the wife of accused in a prosecution for polygamy, before she gave any evidence except her name and place of residence, was properly overruled; her testimony as to the fact of marriage being admissible.

> [As to husband and wife as witnesses for or against each other in criminal cases, see note in 106 Am. St. Rep. 763.]

**Witnesses—Competency—Waiver of Objection.**

7. In a prosecution for polygamy, after the wife of accused had testified as to their marriage, where the counsel for accused objected to further questions as they were stated only on the ground of incompetency, irrelevancy, immateriality, and no foundation laid, the objection that the witness was incompetent because she was the wife of accused was waived.

**Criminal Law—Trial—Reception of Evidence—Sufficiency of Objections.**

8. When evidence would be admissible for any purpose or under any circumstances, an objection should point out specifically what the objection is, and an objection that the question is incompetent, irrelevant and immaterial is insufficient, though it would be sufficient if the evidence were not admissible for any purpose.

**Criminal Law—Appeal—Presenting Questions in Trial Court—Objections to Evidence.**

9. Objections to evidence must be made at the right time or they cannot be considered on appeal.

From Multnomah: JOHN P. KAVANAUGH, Judge.

The defendant, E. E. C. Von Klein, was indicted, tried and convicted in the Circuit Court of Multnomah County of polygamy and sentenced to imprisonment in the penitentiary for the term of from one to four years, and appeals.                    AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Wilson T. Hume* and *Mr. Thomas B. McDevitt.*

For the state there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, and *Mr. Robert F. Maguire,* Deputy District Attorney, with an oral argument by *Mr. Maguire.*

Department 1. MR. JUSTICE RAMSEY delivered the opinion of the court.

On December 13, 1913, the grand jury of Multnomah County returned an indictment against the defendant, charging him with the commission of the crime of polygamy committed as follows:

"The said E. E. C. Von Klein, alias George B. Lewis, on the 12th day of October, A. D. 1911, in the county of Multnomah and State of Oregon, then and there being, did then and there knowingly and feloniously live and cohabit with a woman, to wit, one Ethel Newcomb, as his wife, he (the said defendant) then and there having a wife then living, to wit, Louise Illstrup Von Klein, contrary to the statute in such cases made and provided and against the peace and dignity of the State of Oregon."

The defendant was arraigned upon said indictment, and he pleaded not guilty. He was tried and found guilty by a jury on the 23d day of December, 1913. On December 27, 1913, he was sentenced to imprisonment in the penitentiary for the period of from one to four years. The defendant has brought this case here on appeal, and asks for a reversal of the judgment for several alleged errors.

1. The first point made by the defendant is that the court erred in permitting the witness E. J. Carpenter to testify as to the identity of Ethel Newcomb, as complaining witness against the appellant, charging him with the larceny of about $3,300 worth of property, for the reason that the said evidence, if it tended to prove anything, tended to prove another crime, and did not

tend to prove the charge contained in the indictment. The witness Carpenter, having referred to Mrs. Lewis, and having stated that she was known also as Ethel Newcomb, was asked by the state this question:

"Is that the same Ethel Newcomb who complained against the defendant, charging him with larceny of some $3,300 worth of diamonds?"

Counsel for the defendant objected to this question, alleging that it was incompetent and irrelevant and tended to prove another crime. The attorney for the state represented to the court that he was asking said question for the purpose of proving the identity of the woman. The court overruled the objection, and the witness answered that it was the same woman. · We think that said evidence was admissible for the purpose of identification. We do not think that to say a person is the same person that accused another of larceny tends to prove that the person so accused was guilty of larceny, especially when the statement was made for the purpose of identification.

2. There was some evidence given in this case that tended to show that the defendant stole some valuable jewelry from Miss Newcomb at the Portland Hotel at the time that he was living and cohabiting with her as his wife, as charged in the indictment. The defendant contends that the admission of said evidence was error. On the other hand, the state contends that such evidence was admissible to show the motive that prompted the defendant to marry Miss Newcomb and take her to the Portland Hotel, and there cohabit with her as his wife. The evidence showed that the defendant had a lawful wife in Minnesota; that, only a few days before he was living with Miss Newcomb as his wife at the Portland Hotel, he illegally married her in San Francisco, and took her to Portland, and went to

the Portland Hotel and registered as "Mr. and Mrs. Geo. B. Lewis," and they were assigned to room 637 of that hotel; that the defendant remained there only two or three days, and during that time lived with Miss Newcomb as his wife and called her his wife, and introduced her to persons about the hotel as his wife; that Miss Newcomb had jewelry valued at $3,300 which she wore at the hotel and at a theater; that, after they had been at the hotel about two days, the defendant exhibited a lot of jewelry, wrapped in a lady's handkerchief, to some persons in the hotel barber-shop and told them that it belonged to his wife, and that he was going to have it cleaned; that he went down town ostensibly to have the jewelry cleaned and disappeared, leaving Miss Newcomb and taking her jewelry with him, and leaving the hotel bill unpaid; and that he was arrested in Chicago and brought back to Portland.

The state contends, and the evidence tends strongly to prove, that the defendant planned to steal Miss Newcomb's jewelry, and that, to obtain an opportunity to steal said property, he illegally married her, took her to the Portland Hotel, and lived with her as her husband two or three days, obtained possession of her jewelry on a pretense that he would have it cleaned, and immediately absconded, taking the jewelry with him.

The state contends that the motive for marrying and living with Miss Newcomb was to obtain an opportunity to steal her said property, and the evidence tends to support that contention. The state contends also that the marrying of Miss Newcomb, the living with her at the Portland Hotel, and the stealing of her jewelry were so closely connected as to form one transaction.

In *State* v. *Roberts,* 15 Or. 195 (13 Pac. 899), the court says:

"All of the acts of the parties, done in the furtherance of the common design, though separated by time, and not continuous, constitute one entire transaction, and may be shown upon the trial."

In *State* v. *O'Donnell,* 36 Or. 225 (61 Pac. 893), the court says:

"If the facts and circumstances tend to show that the prisoner committed an independent dissimilar crime, to enable him to perpetrate or conceal an offense, such evidence is admissible against him upon an indictment charging the auxiliary crime, when the intent to perpetrate or conceal such offense furnished the motive for committing the crime for which he is put upon trial."

In *State* v. *Start,* 65 Or. 185 (132 Pac. 514, 46 L. R. A. (N. S.) 266), the court says:

"Under the third exception, an illustration would be where a burglar stole tools from a foundry with which to break the safe burglarized. Evidence of one crime could in such circumstances be given to support an indictment for the other. On the trial for burglary, the stealing of the tools could be shown as preparation for the crime charged, and, on an indictment for larceny of the tools, the commission of the burglary with them would supply the motive for stealing them."

In 2 Wharton's Criminal Ev. (10 ed.), 1667, the author says:

"But the evidence of other crimes is admissible to show motive, and, where relevant for this purpose, the admissibility is not affected by the fact that such evidence may prove other crimes."

We think that the evidence supports the state's contention that, when the defendant illegally married Miss Newcomb, he did so for the purpose of obtaining an

opportunity to steal her jewelry, and that his living with her at the Portland Hotel was a part of the same scheme, and that the state had a right to prove the larceny of her jewelry by him to show the motive for his living and cohabiting with her at the Portland Hotel as his wife. The illegal marriage, the cohabitation at the hotel, and the larceny of the jewelry formed one connected transaction or scheme.

3. The second assignment of error asserts that the trial court erred in sustaining the objections of the state to questions asked J. H. Marble concerning "Jack Lewis." This assignment is too general to raise any question for review.

4. However, we have examined the cross-examination of the witness Marble that is set out in the bill of exceptions, and we find that the questions there set out all asked whether Marble had read accounts supposed to have been published in the "Oregonian" concerning the arrest of the defendant. We cannot see the competency or relevancy of newspaper accounts of the defendant's arrest. The court properly ruled them out.

5. The fourth, fifth, sixth, and ninth assignments of error raise similar questions and can be properly considered together. The defendant was indicted for larceny of the jewelry of Miss Newcomb, and he was tried upon said charge, and the jury failed to agree upon a verdict and were discharged. On the trial of the defendant on said charge of larceny, Miss Newcomb was present and testified. At said trial the Rev. E. R. Dilley was a witness and testified. The evidence of both of these witnesses was taken down in shorthand by J. F. Wood, the official reporter of the court. When said witnesses were examined in said case, the defendant was present in person and by his attorney, W. T.

Hume, Esq., and the defendant had an opportunity to cross-examine said witnesses. His attorney, Mr. Hume, did cross-examine each of them at that time, and the defendant "met them face to face." These witnesses were absent from the state when this case was tried, and the evidence given by them in the larceny case, so far as it was relevant to the issues in this case, was admitted in evidence and read to the jury. When the evidence of E. R. Dilley, given in the larceny case, was offered in evidence, counsel for the defendant objected thereto for the following reasons: "Objected to as incompetent, irrelevant, immaterial, and no foundation laid," etc.

When the evidence of Miss Newcomb, given in the larceny case, was offered, counsel for the defendant objected thereto, for the reason that said evidence was "incompetent, irrelevant, and immaterial," etc. These objections were overruled by the court.

The first point urged against the admission of the evidence of these two witnesses is that the state did not show proper diligence to procure the personal attendance of said witnesses at the trial of this case. The evidence shows that the witness Dilley resided in San Francisco, California, and that he was not in this state at the time of the trial. A subpoena issued out of the trial court would have no validity in the state of California. It is not necessary to review the evidence tending to show diligence; but we have examined it and find that a sufficient showing was made to entitle his evidence, given in the larceny case to be read, if it was competent. Miss Newcomb, also, did not reside in the state, and the showing of diligence to procure her personal attendance was sufficient to entitle her evidence in the larceny case to be read in evidence in this case, if it was competent.

The other chief objection is that the evidence of these two witnesses was not admissible in this case, because the witnesses were not personally present, and the defendant had no opportunity to meet them face to face, and the evidence that was offered and read was given in another case where the issues were different, etc.

The evidence of these witnesses was given in a case in which the State of Oregon was the plaintiff, and the defendant herein was the defendant, and in that case the defendant was charged with the crime of larceny of the jewelry of Miss Newcomb that she had at the Portland Hotel during the time that the defendant was cohabiting with her there as his wife, as stated in the indictment. The parties to said larceny case were the same as the parties to this action. The evidence shows that said witnesses were sworn and gave said evidence in the presence of the defendant and his counsel, and that the defendant had an opportunity to cross-examine them, and that he did, by his counsel, cross-examine each of said witnesses in said larceny case. The defendant met said witnesses face to face in the larceny case, and the evidence that was given by them in the larceny case and was admitted in evidence in this case related to the matters in controversy in this case and was relevant to the issues herein.

In this state the rules of evidence in criminal cases are the same as in civil cases, except as otherwise specially provided in the Criminal Code: Section 1533, L. O. L.

Section 727, L. O. L., provides as follows:

"In conformity with the preceding provisions, evidence may be given on the trial, of the following facts: * * (8) The testimony of a witness, deceased or out of the state, or unable to testify, given in a former action,

suit or proceeding, or trial thereof, between the same parties, relating to the same matter.''

Construing the foregoing provisions of our statute and of Article I, Section 11, of the Constitution, this court in *State* v. *Meyers,* 59 Or. 541 (117 Pac. 819), says:

"The Constitution of Oregon (Article I, Section 11) provides that in all criminal prosecutions the accused shall have the right to meet the witnesses face to face, and the Constitutions of most of the states, as well as the Constitution of the United States, contain similar provisions. It is held, however, that, where the accused has once enjoyed the right to cross-examine and confront the witnesses at an earlier trial, his constitutional right to meet him face to face is not violated by the admission of the" evidence, "when absent, at a subsequent trial. If the defendant is represented by counsel at a preliminary examination, and has had an opportunity to cross-examine witnesses, he has enjoyed his right to meet his accuser face to face, and no objection exists to receiving the testimony."

In *State* v. *Walton,* 53 Or. 565 (99 Pac. 434), the court says:

"The statute was intended to make a general rule, concerning the taking of depositions, inapplicable to criminal trials; but we cannot think it was designed to abrogate a doctrine so firmly established and generally applied as that of permitting the testimony of a witness, given in the manner required by statute, to be used by either the state or defense on a subsequent trial, when he has since died or is absent from the state."

In *Mattox* v. *United States,* 156 U. S. 241 (39 L. Ed. 409, 15 Sup. Ct. Rep. 339), the court says:

"Upon the other hand, the authority for the admissibility of such testimony, where the defendant was present either at the examination of the deceased * * before a * * magistrate, or upon a former trial of the same case, is overwhelming.''

See, also, on this point, *Summons* v. *State,* 5 Ohio St. 325; *United States* v. *Macomb,* 5 McLean, 286 (Fed. Cas. No. 15,702); *State* v. *Bowker,* 26 Or. 313 (38 Pac. 124); *State* v. *Wilson,* 24 Kan. 189 (36 Am. Rep. 257); *McNamara* v. *State,* 60 Ark. 406 (30 S. W. 762).

The admissibility of the evidence of a deceased witness, or of one who is absent from the state, or unable to testify, given in a former action, suit, or proceeding, between the same parties, and relating to the same matter, is settled in this and other states by an overwhelming preponderance of authority, and this rule applies to criminal as well as civil cases; but in criminal cases the defendant must have been present when the evidence was taken and have had an opportunity to cross-examine the witness who gave it.

The defendant in this case was present in person and by his counsel when the evidence under consideration was taken, and his counsel cross-examined the witnesses; the parties were the same as in this case; and the evidence so taken related to the matter in controversy in this cause. Said evidence was admissible, and the court did not err in admitting it.

6. The defendant contends in his seventh assignment that the trial court erred in permitting Mrs. Louise Von Klein, the admitted wife of the defendant, to testify against the defendant, over the defendant's objection as to matters other than the marriage of the defendant to said witness. This assignment is very indefinite, as it does not indicate what particular evidence of the witness is objected to. When this witness was called and sworn, and before she gave any evidence, except to state her name and place of residence, the counsel for defendant asked whether she was the lady charged in the indictment to be the wife of the

defendant, and counsel for the state informed him that she was. Whereupon counsel for the defendant said:

"Then I object to the witness being sworn or testifying in this case, on the ground that she is the wife of defendant."

This objection was overruled.

Section 1535, L. O. L., as amended in 1913 (Laws of 1913, p. 351), is as follows:

"In all criminal actions, where the husband is the party accused, the wife shall be a competent witness, and, when the wife is the party accused, the husband shall be a competent witness; but neither husband nor wife, in such cases, shall be compelled or allowed to testify in such cases unless by consent of both of them: Provided, that in all cases of personal violence upon either by the other, the injured party, husband or wife, shall be allowed to testify against the other: Provided further, that in all criminal actions for polygamy or adultery, the husband or wife of the accused, shall be a competent witness, and shall be allowed to testify against the other, and without the consent of the other, as to the fact of marriage."

This statute makes husband and wife competent witnesses for or against each other in criminal cases; but neither husband or wife shall be compelled or allowed to testify in such cases, unless by the consent of both parties, except that, in cases of personal violence upon either, the injured party may be a witness against the other, and in cases of polygamy or adultery the husband or wife of the accused shall be a competent witness, without the consent of the other, as to the fact of marriage. This statute means that the husband and the wife are competent witnesses for or against each other in criminal cases; but that generally they shall not be either compelled or allowed to testify unless both consent thereto.

In cases of personal violence, by one upon the other, the husband or the wife (not being the party accused) may testify generally against the accused without his or her consent, but in cases of polygamy and adultery the evidence must be confined to the fact of marriage. The trial court properly overruled the defendant's objection to his wife's being sworn and to her testifying. The statute expressly provides that she may, against his objection, testify as to her marriage to the defendant.

7. After the witness had testified to her marriage to the defendant, she was asked several questions relating to his handwriting, etc. Each of those questions was objected to by counsel for the defendant, for the alleged reason that it was "incompetent, irrelevant, and immaterial, and no foundation laid." Counsel, in objecting to these questions, did not object to the witness answering them, for the reason that she was the wife of the defendant, nor did he, by said objections, question her qualifications to answer them. His objections did not go to the competency of the witness. They went only to the questions and the answers sought by them.

In the eighth volume of Ency. Pl. & Prac., page 163, the rule as to objections is stated thus:

"The objection must state the grounds thereof and point out specifically the errors complained of, in order that an opportunity may be given to correct them; if not sufficiently specific, it will not afterward avail the party raising it. In examining a question as to whether the rulings of the court below are correct, the appellate court will not consider any other grounds of objection than those urged in the court below. The appellate court is not a forum in which to discuss new points, but merely a court of review, to determine whether the rulings of the court below, as presented, were correct or not."

The same volume, on page 162, says:

"Objections should be made at the first seasonable opportunity offered, and, in strictness, should be made when action is asked of the court or purposed by it."

In *Mechanics' Sav. Bank* v. *Harding,* 65 Kan. 659 (70 Pac. 656), the court says:

"At the trial the plaintiff offered in evidence what purported to be a transcript of the judgment obtained against the bank of Le Roy. The defendant objected to its introduction on the ground that it was 'incompetent, irrelevant, and immaterial.' This objection was overruled, and we think properly so. It is argued that the transcript was not properly authenticated. If that objection had been made, it should have been sustained. Objections to testimony should be sufficiently specific to direct the attention of the trial court to the exact question contended for. This is due the court as well as the opposite party. It was said in *Howard* v. *Howard,* 52 Kan. 477 (34 Pac. 1117): 'Objections to testimony should be sufficiently pointed out, in order that the court may rule intelligently upon them, and, unless this is done, they are not entitled to consideration here.' In *Johnston* v. *Clements,* 25 Kan. 376, where the objection was based 'on all the grounds ever known or heard of,' it was said: 'The court should not have entertained these objections. Objections made in that form are unfair, both to the court and to the adverse party.' In *Kansas P. Ry. Co.* v. *Cutter,* 19 Kan. 83, a transcript of the record of the proceedings of a probate court of Colorado was admitted in evidence over the objection that it was 'incompetent.' It was held by this court that such objection would not raise the question of the insufficient authentication of the record. * * If it is admissible for any purpose, or under any circumstances, it is the duty of the party objecting distinctly to call the attention of the court to such defect. A neglect to do so will deprive such party of having the question reviewed in this court."

In *Rice* v. *Wadhil,* 168 Mo. 120 (67 S. W. 610), the court says:

"There was no error in overruling the objection to the letters of Columbus T. Rice, as it assigned no ground other than they were 'incompetent, immaterial, and irrelevant,' which we have often held amounts to no more than 'I object.'"

Under the statute of 1913, *supra,* the wife is a competent witness against the husband generally, if he consents thereto, and the defendant in this case, having objected to the questions asked his wife, on the ground that they were "incompetent, irrelevant, and immaterial," and having failed to object to her competency as a witness, for the reason that she was his wife and not permitted to testify against him, without his consent, thereby waived all objections to his wife's competency to testify against him generally, and he cannot be heard to raise that question in this court. His objections were to the competency of the evidence and not to the competency of the witness.

In 12 Ency. of Ev., page 1046, the rule is stated thus:

"Inasmuch as it is the witness, and not this evidence, which is incompetent, the objection must be directed at the former and not the latter. An objection to testimony raises no question as to the witness' competency. * * "

The tenth volume of the same work, at page 329, says:

"Persons objecting to questions as calling for privileged communication must specify that ground in his objection, and indicate the portion objected to. It is not sufficient to state that the question is objected to as 'incompetent.'"

In *McDonald* v. *Young,* 109 Iowa, 705 (81 N. W. 156), the court says:

"Several questions asked of W. W. Young were objected to as being incompetent, immaterial, and irrelevant. It is argued that the questions called for personal transactions with his deceased mother, and the testimony given in response thereto should have been excluded, under Section 3639, Code 1873. The objection, in the form made here, is not sufficient to raise the point presented in argument. The objection of incompetency, without more, goes to the evidence and not to the witness. The testimony given was competent. It is the witness who is made incompetent to speak, under Section 3639, and the objection, to be good, must be made to the witness."

In *Burdick* v. *Raymond,* 107 Iowa, 228 (77 N. W. 833), the syllabus is as follows:

"An objection that testimony is incompetent, irrelevant, and immaterial, hearsay, and not the best evidence, is insufficient to raise the objection that the witness is disqualified by Code, Section 4604, prohibiting certain persons from testifying to personal transactions with decedents."

In *Levering* v. *Langley,* 8 Minn. 111 (Gil. 82), the court says:

"The defendant Langley was called, and under an objection from the plaintiff's counsel that the testimony was incompetent, irrelevant, and immaterial, which was overruled, testified substantially to such an agreement between the parties at the time of the execution of the assignment of the lease. After this evidence had been thus elicited, the counsel for the plaintiff interposed the further objection to the evidence of this agreement that Randall was now dead. The referee overruled the objection as having been made too late. In this decision we think he was clearly right. The plaintiff's counsel could waive his right to object to the evidence of his adversary on the ground of the decease of the plaintiff's assignor, and we think he did so by delaying to assert it until after the witness had been allowed to testify, and more particularly so as he

made objections specifically upon other grounds, which were directed to the admissibility of the testimony offered and not to the competency of the witness by whom it was sought to be proved.''

The objection made to the evidence given by the defendant's wife was that it was "incompetent, irrelevant, and immaterial, and that no foundation had been laid.'' This objection was to the evidence given by the witness, and not to the competency of the witness to testify against the defendant. The evidence that she gave was competent, relevant, and material, and there was no necessity for laying any "foundation" for its introduction.

After the defendant's wife had given her evidence concerning her marriage to the defendant, the defendant should have objected to her giving any further evidence in the case, for the reason that she was his wife, and had no right to testify to any fact except as to her marriage, without his consent.

Had a specific objection of that character been made at the proper time, any evidence by her except as to the marriage would have been inadmissible. But the objections interposed were directed to the evidence and not to her right to give additional evidence against him, and by making said objections and omitting to object to her right to testify to any fact, except the marriage, for the reason that she was his wife, the defendant waived his right to object to her general evidence.

8. When evidence that would be admissible for any purpose, or under any circumstances, is offered, an objection thereto should point out specifically what the objection is, so that the trial court and the adverse party will be thereby advised of the real point of the objection. To say that a question is "incompetent,

irrelevant, and immaterial" conveys neither to the court nor to counsel any specific information as to the real point of objection. If a question calls for facts that would not be admissible for any purpose or under any circumstances, a general objection thereto is sufficient.

9. Objections to evidence must be made at the right time, or they cannot be considered on appeal.

10. We have examined all the assignments of error, but have found no error in the proceedings of the trial court. We have read all the evidence and the charge of the court, and we are satisfied that the defendant had a fair trial, and that there is abundant evidence to support the verdict and the judgment. It is not necessary to discuss, in this opinion, each of the assignments of error. We have examined them all and find no cause for reversal.

The judgment of the court below is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE MOORE concur.

MR. JUSTICE BURNETT dissents.