**Marshall Lee MEEKS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 56266.**

Supreme Court of Missouri,
Division No. 1.

July 17, 1972.

Rehearing Denied Sept. 11, 1972.

Weber Gilmore, Sikeston, for appellant.

John C. Danforth, Atty. Gen., Richard S. Paden, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief in proceeding under Supreme Court Rule 27.26, V.A.M.R., in which movant sought to have set aside a judgment of conviction on plea of guilty and sentence of 50 years' imprisonment on charge of second degree murder.

Marshall Lee Meeks, appellant, and his wife, Judy, were former residents of Bertrand in Mississippi County. They had moved to Gary, Indiana, where marital difficulties arose and the couple separated in September, 1968. Judy returned to Missouri with the couple's children. She instituted divorce proceedings in Missouri and Marshall instituted similar proceedings in Indiana.

On October 14, 1968, Marshall returned to Bertrand, bringing with him a 20-gauge shotgun and an 8 millimeter German rifle which he said was to be used for deer hunting in November. Marshall and one or two companions rode around the country for some eight hours, drinking beer. Marshall went to a lounge in Sikeston at around 6:00 P.M. and remained there until 12:30 or 1:00 on the next morning, drinking more beer. He went to his mother's house in Bertrand. Both he and his mother said he was not intoxicated. His mother fixed some food for Marshall. He and his mother talked for about two hours and Marshall left the house. At the coroner's inquest, the mother testified that when Marshall left he said he was going somewhere to kill Judy. Shortly after he left, Marshall's mother heard shots. Judy was at her brother's house, about a block from Mrs. Meeks. After about five minutes, Marshall returned to his mother's, said "I killed her," took the phone and told the operator that he wanted to call the sheriff and passed out. Judy died from three gunshot wounds and Marshall was charged with murder in the first degree.

Mr. Weber Gilmore, an experienced attorney, was employed to represent Marshall. On his motion, Marshall was sent to the Missouri State Hospital for mental examination. The report of that examination concluded that the accused had no mental disease or defect within the meaning of § 552.010, RSMo 1969, V.A.M.S., that he had the capacity to understand the proceedings against him and to assist in his own defense, and that he knew and appreciated the nature, quality and wrongfulness of his conduct. The report found no symptom or sign of mental disease "outside of his amnesia which the patient claims for the time of the crime and shortly thereafter, * * *."

On March 21, 1969, appellant appeared with his attorney in the Mississippi County Circuit Court. The prosecuting attorney amended the information to reduce the charge to murder in the second degree and to eliminate the habitual criminal act charges. The defendant stated, upon inquiry from the court, that he wished to plead guilty to the second degree murder charge.

No complaint is made that the court did not adequately explain to movant the consequences of his plea. The court interrogated the movant at length as to his understanding of his action and its consequences and as to the voluntariness of his plea and was satisfied that the plea was knowing and voluntary.

After the prosecuting attorney stated his version of the facts of the case, defendant's counsel stated:

"Your Honor, the defendant, Marshall Lee Meeks, does not have now and has not ever had any recollection of this incident. His last recollection was arriving at his mother's home at about midnight that night and having some food and then he blacks out. Now, we would like to bring some witnesses to the stand to show what his condition was immediately before and immediately after this incident. Now, his plea of guilty was made upon the testimony that

his mother and brother gave at the coroner's inquest He has no recollection independently of exactly what happened, but based upon their testimony as to what happened and he felt like that he must have done what he is charged with, and therefore thought he should enter this plea of guilty to it, and I would like to bring his mother and brother and the Sheriff in to show what his condition was immediately prior to and immediately after this killing. Now, I might say this: that he and his wife were separated. They did have two children and he had filed suit up in Indiana for divorce, and he came home for the specific purpose of getting his two children and going back and was told some very disturbing things about what her conduct had been while she was down here and he was up there, and with the Court's indulgence, I would like to offer some short testimony about it.

"THE COURT: Well, we would be glad to hear any testimony you may have with reference to fixing punishment or final action in this case; however, you have not entered a plea of not-guilty by reason of insanity?

"MR. GILMORE: No, we have not.

"THE COURT: And you have not taken the stand that this man was not capable of knowing what he was doing?

"MR. GILMORE: No, sir.

"THE COURT: The record shows that he has entered a plea of guilty to the charge of second degree murder?

"MR. GILMORE: To second degree murder, yes, sir.

"THE COURT: Without reservations, not contingent upon any mental condition?

"MR. GILMORE: I understand that. We do want the Court to know what his physical condition, his general, overall condition was immediately before this happened and immediately after. The Court is aware that we did request and were granted a mental examination at the Mental Hospital in Fulton. I believe the Court has a copy of that report. I gave Marshall Meeks a copy of that report and his family a copy of that report, and they know the doctors up there said he had ability to know right and wrong and knew—had the ability to know the right from wrong.

"THE COURT: And has co-operated with his attorney and—

"MR. GILMORE: And he has co-operated with his attorney."

Appellant's mother and brother and the sheriff then testified to appellant's apparent amnesic condition following the shooting. Appellant testified that he remembered nothing from the time that he started talking to his mother until two or three days later when he was in jail.

A pre-sentence investigation was ordered. On April 22, 1969, appellant again appeared in court and reaffirmed his plea of guilty and the court fixed the punishment at 50 years' imprisonment. Appellant filed an application for parole. The transcript shows no action on the application.

Sometime prior to May 19, 1970, the motion under Supreme Court Rule 27.26, V.A. M.R., now under review was filed. The grounds specified were:

"(a) The trial court record fails to establish that the petitioner made a 'voluntary' plea of guilty in this case. Contrary to 'due process' of the law under the Fourteenth Amendment.

"(b) Petitioner's plea of guilty should not have been accepted because it was an unequivocal plea, embracing a defense of insanity, and the actual statement of the defendant that he didn't know what had happened at the time of the commission of the crime because he didn't remember anything. He had no knowledge of the crime, which rendered the imposition of sentence invalid on the alleged plea of guilty."

**170**

A hearing was held on May 19, 1970. Movant testified:

"Q. Will you tell this Court on what basis you say that is not a voluntary plea of guilty?

"A. Well, I plead guilty because the evidence showed that—they had it against me, but I still didn't remember anything about the crime. That is the reason I plead guilty.

"The Court: You say you plead guilty because of the evidence the State had against you, but you still do not have any recollection of the crime. Is that what you just said?

"A. Yes, sir.

"Q. Now Mr. Meeks, at the time that you plead guilty, did anyone force you to plead guilty? A. No, sir.

"Q. Did anyone compel you to plead guilty? A. No, sir.

"Q. You were given an option or choice by your counsel whether you would plead guilty or not? A. Yes, sir.

"Q. You made the decision to plead guilty? A. Yes.

"Q. Is it your contention before this Court that you didn't know what you were doing at that time? A. No, sir.

"Q. In other words, when you did enter your plea of guilty you understood what you were doing. Is that right? A. Yes, sir.

"Q. Then your position here is that you did not know what you were doing or what happened at the time the events on which your plea was based took place? A. Yes, sir.

"Q. That you were not responsible for your criminal conduct, at the time of such conduct, because you did not know or appreciate the nature and quality and wrongfulness of your conduct. Is that right?

"A. Yes, sir.

*    *    *    *    *    *

"Q. Now, prior to the time that you were brought in here for a Hearing in the Circuit Court, you requested a mental examination, did you not? A. Yes.

"Q. And you had a mental examination?

"A. Yes, sir. I went to—

"Q. Where did you go? A. Fulton.

"Q. Fulton? A. Yes, sir.

"Q. The State Hospital at Fulton? A. Yes, sir.

"Q. And it was after the date of that mental examination that you came into court and entered a plea of guilty? A. Yes, sir.

"Q. Had you been informed of the results of that mental examination? A. Yes, sir.

"Q. Had you been informed by your attorney that you had a right to raise the question being mentally incapacitated by mental disease at the time you entered that plea?

"A. We went through quite thoroughly but I don't really remember—

"Q. What?

"A. We went through it quite thoroughly but I just don't remember too much about it.

"Q. You went through it quite thoroughly? A. Yes.

"Q. Had you seen or been informed of the contents of the mental report from Fulton? A. Yes, sir.

"Q. And you knew what that was? A. Yes, sir.

"Q. What was it—in general?

"A. It was something in there about I was capable of understanding the charges against me and to stand trial.

"Q. Now, you understood that and realized that at the time you entered your plea of guilty? A. Yes, sir.

"Q. But it is your position that because you didn't know what went on at the time the crime—the acts were committed on which this charge is based, that you didn't have an opportunity, a proper opportunity to present that to the Court. Is that what your complaint is? A. Yes, sir.

"Q. But you had been informed of your right to enter a plea of incapacity—A. Yes, sir.

"Q. Or mental incapability. Is that right? A. Yes, sir.

"Q. Before you entered your plea of guilty? A. Yes, sir.

"Q. Now, do you have anything else that you want to tell the Court about this matter?

"A. No, sir, and the only thing I know is that I still don't recall anything about it —about the time of the crime."

The sheriff testified to movant's condition at the time of his arrest. There was testimony as to events on the day of the shooting, none of which had any bearing on the issue presented by the motion.

Mr. Gilmore testified as follows:

"A. Well, of course, I was contacted by his brother, my records show, on the 15th,—His Brother, Bill Meeks. I attended the Coroner's Inquest and waived Preliminary Hearing based upon the Coroner's Inquest, at which said Inquest his mother testified, and his brother testified, as to the events that preceded and the events that happened after the shooting. We waived the Preliminary up to Circuit Court. On the 22nd then of October I filed an application, together with his mother to have him examined by a psychiatrist at the State Hospital at Fulton, Missouri, on the grounds of mental illness or insanity. He was sent to Fulton and stayed up there through January 9th, I believe and then he was returned back to the Mississippi County Jail. Thereafter, the hospital filed a report with Judge Marshall Craig. He furnished me with a copy of the report, and I let his brother, father, brother, sisters, mother, and Marshall, all read the report. The report was to the effect, of course, that he had no mental illness or disease that would have prevented him from knowing right from wrong either at the time of this incident, or at the time that we were in court, or that would have prevented him from knowing right from wrong either at the time of this incident, or at the time that we were in court, or that would prevent him from participating in his defense. I then counseled with Marshall and his family repeatedly, made visits to the home, and at that time Marshall Meeks was charged in the Circuit Court of Mississippi County with First Degree Murder under the Habitual Criminal Act, due to a previous conviction. I advised Mr. Meeks, as well as members of his family, individually and in a big meeting we had back here in the back of the courtroom on two different occasions, the nature of the charge, the range of penalty, and the fact that Judge Craig would do the sentencing regardless of whether or not a jury found him guilty, but that it was up to the judge to do the sentencing. I advised Marshall and his family that in my opinion, based upon my knowledge and experience, a jury would not have any difficulty in reaching a verdict of guilty, based upon the testimony of his mother and his brother, which testimony was first developed at the Coroner's Inquest. On March 17, 1969, I had a meeting in the back room with Frank Meeks, Lorene Meeks, Marshall Meeks, Donald Meeks, Janet S. Chaffee and Bill Meeks, where I again went over all of these matters with them. I explained to the family that Mr. Ashby, the Prosecuting Attorney, had advised me that if we would enter a plea of guilty that he would reduce the charge from First Degree Murder to Second Degree Murder. I advised them further at that time that Judge Craig would still have the same job of doing the sentencing; that in my opinion his chances for parole on a Second Degree Murder charge would be greater than on a First Degree Murder charge; that of course, a charge of

First Degree Murder was of more serious consequence than a Second Degree Murder charge. I reduced to writing the agreement we had that day and I had everybody present to sign it. It was agreed by and between everyone present that Marshall should enter a plea of guilty to Second Degree Murder. Marshall agreed that he should enter a plea of Second Degree Murder—a plea of guilty, with the understanding that the Court be informed that this plea was being entered, not upon his own recollection of matters, but what he had been told by his parents and his brothers and sisters, and from the facts and circumstances surrounding the incident. Further, that first we be allowed to place witnesses on the stand under oath in mitigation. We agreed at that time that we wanted the following witnesses placed on the stand: No. 1, Lorene Meeks, his mother, to show the condition of his mind immediately and after this incident; and two and three, Bill Meeks and Charles Meeks to show his condition immediately after; No. 4, Pedro Simmons to show his condition in jail; No. 5, Rev. Bob Bradford, who went to the jail to see him, and Marshall didn't remember seeing Brother Bradford. I still have that document in my file, signed by Frank Meeks, his father, Lorene Meeks, his mother, Marshall Meeks, himself, Donald R. Meeks, brother, Janet S. Chaffee, a sister, and Bill Meeks, a brother. After we had that conference we returned to the courtroom and Mr. Ashby reduced the charge to Second Degree Murder; we entered a plea of guilty and put on all of the witnesses that we desired. They were cross examined by Mr. Ashby, all of which information is contained in the transcript of the proceedings, Your Honor."

The trial court made the following findings:

"The Court further finds and determines that this plea of guilty was voluntary, was with the benefit of employed counsel, and that such counesl was and is a well-qualified member of the bar, that such plea was not obtained by any fraud or coercion, that Movant had ample time to confer with counsel, relatives and friends before entering such plea, that Movant had the benefit of a mental examination from doctors from State Hospital No. 1, and that Movant voluntarily declined to enter a plea of not guilty by reason of insanity;

"The Court further finds and determines that the evidence and testimony adduced at this hearing to the effect that Movant has no recollection of the facts of this occurrence when he killed his wife has no bearing whatsoever on Movant's plea of guilty and is not legal grounds to set aside his plea of guilty;

"It is therefore the findings of this Court that petitioner's motion filed pursuant to Supreme Court Rule 27.26 is without merit and is therefore overruled and denied; * * *."

Appellant here contends that the trial court's findings are erroneous, particularly insofar as the trial court held that appellant's claimed lack of recollection about the slaying has no bearing on the plea of guilty and is not grounds for setting aside the plea. Appellant's primary reliance is upon the case of United States ex rel. Elksnis v. Gilligan, United States District Court, S.D. New York, 256 F.Supp. 244. In that case, the major ground for permitting withdrawal of a plea of guilty was that the plea was based upon an unfulfilled promise of the sentencing judge that the sentence on a plea of guilty would not exceed 10 years. The sentence imposed was for from 17½ to 35 years. The court further found that the circumstances attendant upon the entry of the plea demonstrated that the plea was not knowingly and understandingly made. The charge was manslaughter in the killing with a knife of defendant's wife. Defendant stated that he did not know that he stabbed his wife. He stated that his wife came at him and hit him with a hammer and then produced a knife and cut him. He took the knife from her.

" 'Q And thereafter did you remember that you moved it toward your wife or made a thrust at your wife?

" 'A I don't know; something exploded in my head and it was black all around, a complete black.

" 'Q Was there anybody else with you?

" 'A Not when the argument started.

" 'Q Mr. Elksnis, are you stating to the Court that you did not do this?

" 'A No. I mean it is not in my mind or in my knowledge that I did.

" 'Q Is it your belief that you did do it?

" 'A I believe later, after the evidence was shown—there was blood on my clothes and it could not have been anybody else and I have come to the conclusion it must have been me.' " (256 F.Supp. 1. c. 257)

On this matter the court stated (256 F. Supp. 257 [23]):

"From the foregoing it cannot be said that the defendant made a deliberate and measured choice—that he entered his plea because in fact he was guilty or because he was compromising his claimed defenses in exchange for the sentence he then believed would be imposed upon him as previously agreed. The forthwith acceptance of the guilty plea without a searching inquiry as to the merits of the alleged self defense plea and the defendant's claim that 'something exploded in my head,' stamp the plea as one not understandingly and knowingly made and this ground, too, requires that it be declared void." (footnotes omitted)

That case is distinguishable from this in that there the defendant's statement revealed two possible defenses—self-defense and insanity—neither of which was examined by the sentencing court. Here, the defendant's statement revealed only one possible defense—mental defect precluding responsibility. The questioning and testimony showed clearly that that defense had been investigated and pursued to the point where appellant and his counsel concluded that the defense was unavailable. That distinction, plus the primary grounds for the holding in Elksnis, deprives the decision of persuasive value in this case.

Appellant also relies upon two decisions of this court. In State v. Arnold, Mo.Sup., 419 S.W.2d 59, a plea of guilty was found not knowing and understanding. The movant there had been charged with obtaining narcotics by use of a false prescription. The circuit attorney's version of the offense was that the movant sat outside in an auto while another person went into a drug store and obtained the drugs. The only questions addressed to the defendant when he entered the plea were (419 S.W.2d 1. c. 60):

" 'THE COURT: You were there in the car, is that right, Mr. Arnold?

" 'THE DEFENDANT: Yes, sir.

" 'THE COURT: You picked up a prescription lying on the seat of the car and put it in your purse, the other man was in the drug store getting the prescription filled? THE DEFENDANT: Yes, sir.' "

This record was held inadequate to sustain the plea, the court stating (419 S.W.2d 1. c. 62 [3]):

"The transcript in this case is even more lacking in any showing that the court explained, or that appellant understood, the consequences of the plea or that appellant assented to it. There was no explanation of range of punishment; there was no determination whether counsel had explained the consequences. Even the circumstances related by the assistant circuit attorney do not compel a finding of appellant's guilt of the charge. The record shows further that in the court's own language, 'he didn't know anything about' the commission of the alleged crime. This shows not only a lack of understanding of the proceedings and their consequence, necessary to a voluntary plea of guilty, but demonstrates also that the plea was, at best, equivocal. See State v. Williams, Mo., 361 S.W.2d 772."

In State v. Williams, Mo.Sup., 361 S.W. 2d 772, the movant had been sentenced to death on a plea of guilty to a charge of rape. Counsel for defendant at the time of the plea told the court that after thorough investigation they were not convinced of the defendant's guilt; that defendant had only told them "I don't know"; that they hated to enter a plea in a case they were not sure of but did so because defendant did not know where he was and they could not find out. This court held a plea in such circumstances was equivocal.

Neither Arnold nor Williams is here controlling. In Arnold, no factual basis for the plea appeared. The circuit attorney's statement did not connect the defendant with the offense and defendant's statement that he knew nothing about what happened left no factual basis for acceptance of the plea. In Williams, counsel who spoke for the defendant expressed their doubt about the plea after thorough investigation left them unconvinced of the defendant's connection with the offense. Here there was no doubt about defendant's connection with the offense, merely defendant's denial of recollection of the occurrence.

This case is controlled by the principles laid down in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. In that case, the court stated (400 U.S., 1. c. 37–38, 91 S.Ct. 1. c. 167):

"* * * Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

"Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. Here the State had a strong case of first-degree murder against Alford. Whether he realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading. Because of the overwhelming evidence against him, a trial was precisely what neither Alford nor his attorney desired. Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term. When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, see McCarthy v. United States, *supra,* 394 U.S. [459], at 466–467, 89 S.Ct. [1166], at 1170–1171 [22 L.Ed.2d 418] (1969), its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it." (footnotes omitted)

Alford entered his plea while protesting his innocence. Here, movant did not protest his innocence. He merely denied recollection of the event. The trial court carefully and at length questioned appellant about his understanding of his action. He did not deny at the 27.26 hearing that he knew what he was doing and realized the consequences of his action. In these circumstances, the findings of the trial court are not clearly erroneous and will be affirmed. Supreme Court Rule 27.26(j), V.A. M.R. See State v. Brech, 84 S.D. 177, 169 N.W.2d 242, 246–247 [2].

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

BARDGETT, Acting P. J., SEILER, J., and FINCH, C. J., concur.

HOLMAN, P. J., not sitting.