Marshall L. MEEKS, Petitioner,

v.

Harold R. SWENSON, Warden, Missouri State Penitentiary, Jefferson City, Missouri, Respondent.

No. 72 C 600(4).

United States District Court,
E .D. Missouri, E. D.

Feb. 27, 1973.

Marshall L. Meeks, pro se.

John C. Danforth, Atty. Gen. State of Missouri, and Richard Paden, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM

WANGELIN, District Judge.

This habeas corpus action pursuant to 28 U.S.C. § 2254 is before the Court on the response of the Warden of the Missouri Penitentiary to the show cause order of the Court and on petitioner's motions (a) to reject the respondent's response as being filed out of time, (b) for appointment of counsel, and (c) for an evidentiary hearing. Respondent was granted leave by the Court to file his response out of time.

Petitioner was convicted, upon his plea of guilty, of second degree murder on April 22, 1969, and sentenced to fifty years imprisonment by the Circuit Court of Mississippi County, Missouri.

This action was originally filed in forma pauperis in the United States Dis-

trict Court for the Western District of Missouri and thereafter transferred to this Court.

Petitioner alleges that he is being held in custody unlawfully because his plea of guilty was not voluntary and unequivocal, and knowingly and understandingly made, and therefore should not have been accepted by the trial court.

■ Respondent asserts, and the Court finds, that this ground was raised by petitioner in a motion pursuant to Missouri Supreme Court Rule 27.26, V. A.M.R. Said motion was denied and the denial affirmed on appeal. Meeks v. State of Missouri, 484 S.W.2d 167 (Mo. 1972). Therefore, petitioner has exhausted his state remedies with regard to this ground.

The subject state criminal action was initiated by an information charging petitioner with the October 15, 1968, murder of his wife, Judy Meeks. On October 22, 1968, petitioner moved for and was granted a mental examination. The sealed examination report on January 30, 1969, was filed with the Court. On January 31, 1969, an amended information was filed charging petitioner, in addition to murder, with being an habitual criminal.

On March 21, 1969, the state was allowed to reduce the murder charge from first to second-degree murder and to eliminate the habitual criminal allegation. At this time petitioner indicated that he wished to plead guilty to second degree murder. The trial court advised petitioner that he had a right to trial by jury, that the Court fixes punishment, and that the range of possible imprisonment is from ten years to life. (Exh. A, p. 11). The petitioner testified that no officer abused him in any way, that he was not mistreated, that no one made any promises to him, or threatened him in any way. (Exh. A, p. 12). Petitioner further testified that he had ample time in which to consult with his retained counsel, that he was satisfied with counsel, (Exh. A, p. 13), and that he had been permitted to discuss the matter with his family. (Exh. A, p. 14). Pursuant to the Court's request the prosecuting attorney recounted the known facts as follows:

MR. ASHBY: If the Court please, on October the 15th, 1968, Marshall Lee Meeks was living up in Indiana. His wife, Judy Meeks, was living down in Bertrand, Missouri, and staying at the home of her sister and brother-in-law, Mr. and Mrs. Harry Webb at Bertrand. On the night of October 15th or rather early in the morning around three o'clock, Judy Meeks was asleep on the couch in the living room of the home of Harry Webb. Marshall Lee Meeks came up to the front of the house. He had a deer rifle and shot through the window and the front door of the Harry Webb home three bullets, struck Judy Meeks. She ran from the living room into the bedroom where she fell and died immediately. (Exh. A, p. 15).

Then, Weber Gilmore, petitioner's defense counsel spoke and the following colloquy occurred:

THE COURT: All right. Mr. Gilmore?

MR. GILMORE: Your honor, the defendant, Marshall Lee Meeks, does not have now and has not ever had any recollection of this incident. His last recollection was arriving at his mother's home at about midnight that night and having some food and then he blacks out. Now, we would like to bring some witnesses to the stand to show what his condition was immediately before and immediately after this incident. Now, his plea of guilty was made upon the testimony that his mother and brother gave at the coroner's inquest. He has no recollection independently of exactly what happened, but based upon their testimony as to what happened and he felt like that he must have done what he is charged with, and therefore thought he should enter this plea of guilty to it, and I would like to bring his mother and brother and the Sheriff in to

show what his condition was immediately prior to and immediately after this killing. Now, I might say this: that he and his wife were separated. They did have two children and he had filed suit up in Indiana for divorce, and he came home for the specific purpose of getting his two children and going back and was told some very disturbing things about what her conduct had been while she was down here and he was up there, and with the Court's indulgence, I would like to offer some short testimony about it.

THE COURT: Well, we would be glad to hear any testimony you may have with reference to fixing punishment or final action in this case; however, you have not entered a plea of not-guilty by reason of insanity?

MR. GILMORE: No, we have not.

THE COURT: And you have not taken the stand that this man was not capable of knowing what he was doing?

MR. GILMORE: No, sir.

THE COURT: The record shows that he has entered a plea of guilty to the charge of second degree murder?

MR. GILMORE: To second degree murder, yes, sir.

THE COURT: Without reservations, not contingent upon any mental condition?

MR. GILMORE: I understand that. We do want the Court to know what his physical condition, his general, overall condition was immediately before this happened and immediately after. The Court is aware that we did request and were granted a mental examination at the Mental Hospital in Fulton. I believe the Court has a copy of that report. I gave Marshall Meeks a copy of that report and his family a copy of that report, and they know the doctors up there said he had ability to know right and wrong and knew—had the ability to know the right from wrong.

THE COURT: And has co-operated with his attorney and—

MR. GILMORE: And he has co-operated with his attorney. (Exh. A, pp. 15–17).

Appellant's mother and brother and the sheriff then testified to appellant's apparent amnesic condition following the shooting. Appellant testified that he remembered nothing from the time that he started talking to his mother until two or three days later when he was in jail. As the Missouri Supreme Court recounted, thereafter:

A pre-sentence investigation was ordered. On April 22, 1969, appellant again appeared in court and reaffirmed his plea of guilty and the court fixed the punishment at 50 years' imprisonment. Appellant filed an application for parole. The transcript shows no action on the application.

*Meeks, supra* 484 S.W.2d at 169.

During the Rule 27.26 evidentiary hearing the trial court enquired of petitioner why he alleged that his guilty plea was not voluntary. To this petitioner responded

A. Well, I plead guilty because the evidence showed that—they had it against me, but I still didn't remember anything about the crime. That is the reason I plead guilty.

THE COURT: You say you plead guilty because of the evidence the State had against you, but you still do not have any recollection of the crime. Is that what you just said?

A. Yes, sir.

Q. Now Mr. Meeks, at the time that you plead guilty, did anyone force you to plead guilty. A. No, sir.

Q. Did anyone compel you to plead guilty? A. No, sir.

Q. You were given an option or choice by your counsel whether you would plead guilty or not? A. Yes, sir.

Q. You made the decision to plead guilty. A. Yes.

Q. Is it your contention before this Court that you didn't know what you were doing at that time? A. No, sir.

Q. In other words, when you did enter your plea of guilty you understood what you were doing. Is that right? A. Yes, sir.

Q. Then your position here is that you did not know what you were doing or what happened at the time the events on which your plea was based took place? A. Yes, sir.

Q. That you were not responsible for your criminal conduct, at the time of such conduct, because you did not know or appreciate the nature and quality and wrongfulness of your conduct. Is that right? A. Yes, sir.

\*   \*   \*   \*   \*   \*

Q. Now, prior to the time that you were brought in here for a Hearing in the Circuit Court, you requested a mental examination, did you not? A. Yes.

Q. And you had a mental examination?

A. Yes, Sir. I sent to—

Q. Where did you go? A. Fulton.

Q. Fulton? A. Yes, sir.

Q. The State Hospital at Fulton? A. Yes, sir.

Q. And it was after the date of that mental examination that you came into court and entered a plea of guilty? A. Yes, sir.

Q. Had you been informed of the results of that mental examination?

A. Yes, sir.

Q. Had you been informed by your attorney that you had a right to raise the question being mentally incapacitated by mental disease at the time you entered that plea?

A. We went through quite thoroughly but I don't really remember—

Q. What?

A. We went through it quite thoroughly but I just don't remember too much about it.

Q. You went through it quite thoroughly? A. Yes.

Q. Had you seen or been informed of the contents of the mental report from Fulton? A. Yes, sir.

Q. And you knew what that was? A. Yes, sir.

Q. What was it—in general?

A. It was something in there about I was capable of understanding the charges against me and to stand trial.

Q. Now, you understood that and realized that at the time you entered your plea of guilty? A. Yes, sir.

Q. But it is your position that because you didn't know what went on at the time the crime—the acts were committed on which this charge is based, that you didn't have an opportunity, a proper opportunity to present that to the Court. Is that what your complaint is? A. Yes, sir.

Q. But you had been informed of your right to enter a plea of incapacity—A. Yes, sir.

Q. Or mental incapability. Is that right. A. Yes, sir.

Q. Before you entered your plea of guilty? A. Yes, sir.

Q. Now, do you have anything else that you want to tell the Court about this matter?

A. No, sir, and the only thing I know is that I still don't recall anything about it—about the time of the crime. (Exh. B, pp. 10–52).

The trial court in ruling on petitioner's Rule 27.26 motion made the following findings of fact:

The Court further finds and determines that this plea of guilty was voluntary, was with the benefit of employed counsel, and not obtained by any fraud or coercion, that Movant had ample time to confer with counsel, relatives and friends before entering

such plea, that Movant had the benefit of a mental examination from doctors from State Hospital No. 1, and that Movant voluntarily declined to enter a plea of not guilty by reason of insanity;

The Court further finds and determines that the evidence and testimony adduced at this hearing to the effect that Movant has no recollection of the facts of this occurrence when he killed his wife has no bearing whatsoever on Movant's plea of guilty and is not legal grounds to set aside his plea of guilty;

It is therefore the findings of this Court that petitioner's motion filed pursuant to Supreme Court Rule 27.26 is without merit and is therefore overruled and denied; * * *. (Exh. B, pp. 64–65).

█ The Court finds that the record of the evidentiary hearings held in the Missouri trial courts, both before and after petitioner pled guilty and on the Rule 27.26 motion, indicate that a sufficient and adequate factfinding process was utilized and that no further evidentiary hearing on the issue presented is required by Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The issue presented to this Court by the instant petition is whether or not the state court was required to reject petitioner's plea of guilty because he himself could not remember the facts of the killing with which he was charged.

The Missouri Supreme Court ruled against petitioner citing North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). That case is also cited by respondent as controlling this case.

In *Alford* the defendant was charged with first degree murder, was represented by appointed counsel who questioned those witnesses that defendant said would substantiate his innocence. How-

ever, these witnesses strongly indicated his guilt. Faced with the strong evidence of guilt petitioner pled guilty to a reduced charge of second-degree murder. *Alford, supra* at 27, 91 S.Ct. 160. The Supreme Court ruled that

In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it. *Ibid* at 38, 91 S.Ct. at 168.

In reaching its decision the Court said "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling *or unable* to admit his participation in the acts constituting the crime." (emphasis added). *Ibid.* at 37, 91 S.Ct. at 167.

The Court notes from the record that the petitioner was found by his psychiatric examiners, before entering his guilty plea, to have no mental disease of defect, to have the capacity to understand the proceedings against him and to assist in his own defense, and to know and appreciate the nature, quality and wrongfulness of his conduct. (Exh. A, p. 22). His mother and brother, and the Sheriff of Mississippi County testified as to petitioner's actions before and after the killing. (Exh. A, pp. 23–38).

█ The Court finds that the evidence against him, of which petitioner was knowledgeable before he pled, was a sufficient basis for the Court's decision to accept the guilty plea. The Court concludes that *Alford* controls the instant action and that the decision of the state trial court to accept petitioner's plea of guilty was proper. This action, therefore, must be dismissed.

The motions of the petitioner will be denied.