STATE, Respondent, v. STALEY, Appellant.

(229 N. W. 373.)

(File No. 6596. Opinion filed February 28, 1930.)

For former opinion, see 223 N. W. 943.

*Louis H. Smith* and *Danforth & Barron,* all of Sioux Falls, for appellant.

*Buell F. Jones,* Former Attorney General, *M. Q. Sharpe,* Attorney General, and *F. W. Mitchell* and *R. F. Drewry,* Assistant Attorneys General, for the State.

BURCH, J.  This case is before us on rehearing.  The former opinion is reported in 54 S. D. 552, 223 N. W. 943.  Therein the trial court was reversed for admitting evidence of the conduct of accused following the homicide.  Such evidence covered the conduct of accused on the same day but subsequent to the shooting of Wasson and involved other criminal acts which appeared to this court to be wholly disconnected from the act of accused for which he was on trial.  The evidence is fully set out in the first opinion, and the reader is referred to that opinion (223 N. W. 943) for the facts.

On rehearing the Attorney General argues that such evidence has a direct bearing upon the act for which accused is on trial; that the conduct of accused during the afternoon both before and after the homicide discloses a mental state that may be shown in order that the homicidal act may be understood and properly characterized.  The fact of the killing by accused, the manner of its accomplishment, and the circumstances immediately surrounding the act, are with the exception of a few details conclusively shown by the state and are corroborated by accused.  Accused admitting the homicide says it was justifiable in self-defense.  He would have it appear from the circumstances immediately surrounding the homicide that he was innocently within the inclosure surrounding Wasson's lands and that Wasson came to him, provoked a quarrel, and attacked him with a knife, forcing him in self-defense to take the life of Wasson.  Whether Wasson drew a knife or made any attack is in dispute.  As bearing on the quetsion of who was the aggressor and the intent of accused in killing deceased, it is claimed the conduct of accused from the time he took the gun (a sixshooter) to the time of his arrest shows that accused left his home with the deliberate plan of gunning for a number of his neighbors, and that proof of such plan has a direct bearing in proof of the character of the homicide, and was therefore competent.  In our former opinion we concluded the conduct of accused subsequent to the homicide did not tend to prove the intent and mental attitude of accused at and prior to the homicide and was therefore incompetent and prejudicial to accused tending only to show his quarrel-

some disposition with no direct probative value on the issues involved. Not being fully satisfied with our position, we granted a rehearing and now direct our attention to such evidence as directly bearing on the issue involved. If accused's conduct subsequent to the homicide is directly connected with and tends to prove a preconceived plan and its continued execution in which the homicide is but one of several acts planned, it may then be shown to characterize the homicidal act as unlawful and a part of a premeditated criminal plan.

In State v. Deliso, 75 N. J. Law, 808, 69 A. 218, 221, the court says: "The human passions that underlie the malice known to the law do not necessarily arise at the instant of crime. They have a natural history of their own—a birth, a growth, and a maturity. Hence the distinction to be borne in mind between evidence that traces this natural phenomenon to its criminal debacle and testimony as to isolated and entirely unconnected transactions is that the latter merely tends to show the criminal character and predisposition of the accused, whereas the former has a direct relevancy to his state of mind when the given offense was committed."

It is the Attorney General's contention that this evidence here considered belongs to the former class and directly proves accused's state of mind at the time of the homicide. He says: "This was defendant's busy afternoon. He started out after dinner, not to get a rabbit or find the colt, but to conduct a campaign. His plan was to settle with his neighbors with whom he had differences or against whom he bore grudges. As he stated to Grotta he was 'not going to run over any more.' He carried his revolver all day to aid in the execution of his plan. He was looking for trouble. He had 'run amuck.' His plan was an aggressive one. He sought to provoke trouble. The testimony objected to was all material and relevant, therefore, as showing the state of mind, motive, design, malice and intention of the defendant in the commission of the crime charged. It all tends to show the degree of the crime charged and shows that the homicide was committed without justification. Also, that the difficulty was brought about by the defendant so that he may not urge any right of self-defense. The assaults were in quick succession, a series, parts of one design, executed in one campaign, with one mind and purpose." Does the evidence tend to prove such a state of mind? Accused thought it worth

while to explain his reason for taking his gun, his reason for being in the inclosure, and his apparently accidental encounter with deceased in an innocent and lawful enterprise. Do his acts belie his words and show that his acts were not lawful and innocent; that he took his gun, not to shoot rabbits, as he claims, but to shoot neighbors; that he entered the inclosure to assert a fancied right to travel any portion of the highway, although the portion he chose to use was not needed for his convenience in travel, was obstructed by an inclosure of deceased which he would have to partially destroy in so using the highway, while one-half of the highway was open, unobstructed, with an open and used road much easier and more convenient for accused's use; that he chose the way he took in the hope of an encounter with deceased, intending to enforce his asserted right with the gun in the event of such an encounter; that after the anticipated encounter and killing of deceased, he continued without change of purpose to seek other neighbors with whom he had differences, provoked quarrels with them, and attempted to enforce his claims with the gun where his demands were not readily accorded him? We think the evidence as a whole does tend to prove such a plan and tends to show his mental attitude and intent at the time of the homicide. His acts disclose a consistent use of the gun in three or four hostile encounters, and his intent in doing so is not alone supported by the presumption that he intended what he did, but is supported by his own statement to the effect that he was not going to be run over any more. On this theory the evidence was admissible and our former opinion holding otherwise is reversed and withdrawn.

The principle upon which this evidence is admissible is supported by the following cases: O'Brien v. Commonwealth, 115 Ky. 608, 74 S. W. 666; Whitney v. Commonwealth, 74 S. W. 257, 24 Ky. Law Rep. 2524; State v. Deliso, 75 N. J. Law, 808, 69 A. 218; People v. Selby, 198 Cal. 426, 245 P. 426; People v. Walters, 98 Cal. 138, 32 P. 864; Hoxie v. State, 114 Ga. 19, 39 S. E. 944; Little v. State, 39 Tex. Cr. R. 654, 47 S. W. 984; People v. Craig, 111 Cal. 460, 44 P. 186; Bowman v. United States, 50 App. D. C. 90, 267 F. 648; Milton v. State, 40 Fla. 251, 24 So. 60; State v. King; 111 Kan. 140, 206 P. 883, 22 A. L. R. 1006; State v. La Rose, 54 Or. 555, 104 P. 299; Wigmore on Evidence, vol 1, § 363.

Having now decided that the evidence objected to was direct upon the issue of intent and therefore admissible, it becomes necessary to consider other assignments of error urged in appellant's brief. We disposed of one covering the denial of a requested instruction in our first opinion which we think was rightly decided. See 54 S. D. 552, 223 N. W. 943.

The court gave an instruction as follows: "In this case the defendant, conceding that he shot the deceased, the burden is upon him under the law of this state, to show that this act of his was justifiable homicide, and in case you find that it was not justifiable homicide, then it would be your duty to convict the defendant of either murder or manslaughter in the first or second degrees as hereinafter instructed." The giving of this instruction is assigned as error. It is evident the instruction was intended to cover the law as expressed by section 4900, R. C. 1919, providing: "Upon a trial for murder, the commission of the homicide * * * being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter or that the defendant was justifiable or excusable." The instruction, however, is broader than the statute and fails to include the exception "unless the proof on the part of the prosecution tends to show that the crime committed, only amounts to manslaughter or that the defendant was justifiable or excusable." In State v. Yokum, 11 S. D. 544, 79 N. W. 835, an instruction intended to embody the law expressed by section 4900 was approved and this court held that the accused must prove the affirmative defense by a preponderance of the evidence and that it was not enough if his proof raised only a reasonable doubt as to his defense. In State v. Wilcox, 48 S. D. 289, 204 N. W. 369, 372, this court said: "In a criminal case the burden of proof rests upon the prosecution at every stage of the trial. While it is incumbent upon the defendant to show justification where his defense is 'self-defense,' this does not mean that he must prove his defense beyond a reasonable doubt, but only that his evidence must be sufficient to create or leave in the minds of the jury a reasonable doubt as to whether he was justified in taking the life of the deceased. The portion of the opinion in State v. Yokum, supra, holding to the contrary is hereby expressly overruled."

The instruction in the form it was given was clearly erroneous. It should not have been given in any form. Any attempt to embody this statutory provision in an instruction to the jury is unwarranted and likely to lead to confusion. The state must prove the defendant guilty. The meaning of the statute must therefore be understood as merely relieving the state of the necessity of proving the negative and that the jury may assume that the killing was not justifiable, excusable, or done under mitigating circumstances, unless there is some affirmative proof of those facts, introduced either by the state or the defendant. If there is such proof, then the jury before it can convict must be satisfied beyond a reasonable doubt that the defendant is guilty of the crime for which he is convicted, and that his act was not justifiable, excusable, or done under mitigating circumstances lessening the degree of the offense. The defendant, however, is not required to take the stand or to produce any witnesses or evidence to show his innocence, but the state must establish his guilt beyond a reasonable doubt. In this case, appellant assumed the burden of proof, took the stand himself and also introduced other testimony in which he sought and attempted to prove justification, and the court in a later portion of his charge instructed the jury that: "While the burden of proof is upon the defendant as hereinbefore instructed to show that this homicide was justifiable, nevertheless if, after a full and fair consideration, of all the evidence offered both by the defendant and by the state, you are not satisfied beyond a reasonable doubt of his guilt from all such evidence, then it will be your duty to give him the benefit of that doubt and acquit him." The instructions as a whole are clear, and we think the jury could not have misunderstood the law governing the case and that no prejudice resulted.

Of the assignments covering a refusal to give requested instructions we have already disposed of one in our former opinion. The others have been carefully examined. Two upon which stress is laid by appellant pertain to the individual responsibility of each juror, and to the weight to be given to a witness if he has knowingly testified falsely on any material fact. As to these we find the court instructed fully and properly concerning these matters and therefore did not err in refusing the instructions requested.

We have carefully considered all assignments and find no prejudicial error.

The judgment and order appealed from are affirmed.

MISER, C., appointed in place of BROWN, P. J., absent and not sitting.

SHERWOOD, J., and MISER, C., concur.

POLLEY and CAMPBELL, JJ. (dissenting). We think the court below erred in admitting testimony of subsequent and unrelated offenses, and in giving the instruction previously condemned by this court in State v. Wilcox, 48 S. D. 289, 204 N. W. 369. These points have been presented on appeal by proper assignments, and upon consideration of the entire record we are unable to arrive at the conclusion that such errors were without prejudice. We are therefore of the view that the correct result was reached in the former opinion in this case (54 S. D. 552, 223 N. W. 943) and are unable to concur with the majority in the present opinion.