**Bedie THUNDERSHIELD, a/k/a Bede Thundershield, Petitioner,**

v.

**Herman SOLEM, Warden, South Dakota State Penitentiary, Sioux Falls, South Dakota, and the State of South Dakota and its officers and agents, Respondents.**

No. CIV76–4060.

United States District Court, D. South Dakota, S. D.

April 11, 1977.

William P. Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for petitioner.

Brent A. Wilbur, Asst. Atty. Gen., Pierre, S. D., for respondents.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Petitioner Bedie Thundershield seeks a writ of habeas corpus, based upon his allegation that his plea of guilty to a state charge of second degree manslaughter was not entered knowingly, intelligently and voluntarily. Thundershield was arrested for the killing of Paul Raymond Gilchrist, which occurred on or about the 29th day of June, 1971, at Mina Lake in South Dakota. Petitioner was arrested in Fort Yates, North Dakota, where he had been jailed for a tribal ordinance violation. Thundershield was transported to Ipswich, South Dakota, where a preliminary hearing was held on July 30, 1971, before a Justice of the Peace. At this hearing Petitioner was represented by counsel, Mr. Brown and Mr. Thurow, who had previously been appointed to represent him.

On September 15, 1971, Petitioner was arraigned before Circuit Court Judge Vernon C. Evans on the charge of murder. At this time he pleaded guilty to the lesser offense of second degree manslaughter. Subsequently, on November 2, 1971, Thundershield was sentenced to the South Dakota State Penitentiary for nine years and nine months.

On July 10, 1973, a hearing on Thundershield's petition for post-conviction relief was held before Circuit Judge Jon Fosheim. At that time Thundershield was represented by Mr. Frank Schlueter, who had been appointed to represent him for the purpose of that hearing. Thundershield's petition was denied by Judge Fosheim on November 13, 1973, which decision was appealed. The South Dakota Supreme Court, in State v. Thundershield, 242 N.W.2d 159 (1976), affirmed Judge Fosheim, and this petition followed.

The underlying facts are essentially as follows. On July 4, 1971, the body of Paul Raymond Gilchrist was found floating in west Mina Lake. Petitioner, while already in tribal custody at Fort Yates, was interviewed by two Bureau of Indian Affairs criminal investigators and stated that he and his wife had been drinking at the lake with Gilchrist; that he had passed out only to be awakened by his wife's screams; that he saw Gilchrist apparently attempting to rape his wife; that he had gotten mad and struck and kicked Gilchrist; and that he had been pretty drunk, and didn't know whether he had hit Gilchrist with a tire iron or other weapon. Thundershield did not have an attorney present at that interview, and it is not clear whether he asked for an attorney to be present. On the basis of his statement, Petitioner was extradited to South Dakota, where the procedures previously described took place.

In his petition before this Court, Petitioner makes essentially three claims regarding the guilty plea entered by him at his arraignment on September 15, 1971. First, that the plea was rendered in deference to illegally obtained statements given to the BIA policemen. Secondly, that Petitioner never admitted the crime, but maintained his innocence throughout all proceedings. Finally, that Petitioner was incorrectly advised of the elements of the crime to which he pleaded guilty. Thundershield maintains that these alleged defects, individually or collectively, rendered his plea defective as a knowing, intelligent and voluntary plea of guilty. A central contention to Petitioner's case is also his claim that he had, and continues to have, a very limited understanding of the English language.

The manner in which Federal courts are to entertain applications for a writ of habeas corpus by a prisoner in state custody is delineated primarily at 28 U.S.C. section 2254. There seems to be no question that Petitioner raises a claim based on "violation of the Constitution, or laws or treaties of the United States," 28 U.S.C. section 2254(a), or that he has exhausted his state remedies, 28 U.S.C. section 2254(b) and 2254(c).

The Court has determined that two of the exceptions listed in 28 U.S.C. section 2254(d) are present in this case,[1] and for that reason additional evidence was submitted to the Court. Because of the somewhat unusual situation present in this case,[2] the Court did not hold an evidentiary hearing. Instead, 28 U.S.C. section 2246 was utilized, and the affidavit of Dennis Brown, Petitioner's original court-appointed attorney, was submitted by the State. Petitioner filed interrogatories which were answered by Brown. In addition, the deposition of the Petitioner is included in the State post-conviction record, and the Petitioner's affidavit was filed with this Court for purposes of this proceeding. The Court is of the opinion that the record, thus expanded and supplemented, is adequate for the proper resolution of Petitioner's claims. See *Brewer v. Williams*, —— U.S. ——, at ——, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

## SUPREME COURT DECISIONS BEARING ON THE VALIDITY OF GUILTY PLEAS

This case raises serious questions concerning guilty pleas and the plea bargaining process. Like all waivers of constitutionally protected rights, a plea of guilty is valid only if made knowingly, voluntarily and intelligently. *Kercheval v. United States*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). Circumstances which remove the voluntary character of the plea, or indicate that the plea was not knowingly made, leave the plea open to collateral attack. See *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Because a plea of guilty is a conclusive admission of guilt, and because the plea amounts to a waiver of at least three important federal rights,[3] the record of state court proceedings[4] must show that the plea was volun-

---

**1.** The exceptions to section 2254(d) which are present in this case are 2254(d)(1) (state court hearings did not resolve the merits of the factual dispute), and 2254(d)(3) (state court hearing did not adequately develop the material facts). Specifically, the Court finds that the questions of the failure to be properly advised of the elements of the crime to which he pleaded guilty, and the question which arises from the fact that Petitioner never actually admitted the killing of Gilchrist, were not adequately addressed and resolved in the state court proceedings. Thus, the conclusions in the state court proceedings cannot be given the normal presumption of correctness to which they might otherwise be entitled. The Court does find, however, that the factual questions surrounding Petitioner's claim of coercion stemming from the statement taken prior to extradition, and his claim of a general inability to comprehend the English language were fully presented to and resolved by the state courts. Thus, the factual findings of the state courts on these issues are presumptively correct. 28 U.S.C. section 2254(d). *See also Jones v. Wainwright*, 494 F.2d 1184 (5th Cir. 1974); *In re Parker*, 423 F.2d 1021 (8th Cir. 1970); *cf. McQueen v. Swenson*, 498 F.2d 207 (8th Cir.

1974). As a result, Petitioner is faced with differing standards of proof for the contentions he makes. As to his claims fully addressed by the state courts, Petitioner must show by "convincing evidence" that the factual determinations of the state courts were erroneous. 28 U.S.C. section 2254(d); *LaVallee v. Delle Rose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973); *Jones v. Swenson*, 469 F.2d 535 (8th Cir. 1972). As to the other claims presented, the state has the burden of proving the facts which would validate the guilty plea under the proper federal standards. *Williams v. Brewer*, 509 F.2d 227 (8th Cir. 1974), *aff'd.* —— U.S. ——, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

**2.** Petitioner's original appointed counsel has since moved to California and is beyond the subpoena power of this Court.

**3.** The rights waived are the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers.

**4.** Federal court proceedings must comply with the dictates of Rule 11, Fed.R.Crim.Pro., as interpreted in *McCarthy v. United States*, 394

tarily made with "a full understanding of what the plea connotes and of its consequences." *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).

Recently, in *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Supreme Court pointed out that the elements of voluntariness and understanding are closely related. The Court indicated that a plea may be involuntary in the constitutional sense if made without an understanding of the constitutional protections waived, or if made with such an incomplete understanding of the charges that it was not an intelligent admission of guilt. *Henderson, supra* at 645, n. 13, 96 S.Ct. 2253.

 Other recent Supreme Court decisions make it clear, however, that many factors in the criminal process do not rise to the level of coercing a plea of guilty. Foremost among these factors is a desire to plead guilty to a lesser charge to avoid the possibility of capital punishment or a long term of incarceration. Specifically, the desire to plead guilty to avoid the death sentence does not invalidate a guilty plea under Fifth Amendment standards, *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In addition, the plea of guilty is not coerced merely because it was motivated by a confession which would or might have been inadmissible, especially where the plea is entered upon the reasonably competent advice of counsel. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). Nor will the failure to specifically admit guilt invalidate an otherwise intelligent plea, made as a choice between known alternatives. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). More recently, in *Tol-*

*lett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), the Supreme Court summed up its view of the so-called *Brady* trilogy:

We thus reaffirm the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, *McMann, supra*, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Coun-

U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). It is important to note that *McCarthy* did not directly involve constitutional issues; rather, the question before the Court was the proper interpretation and application of Rule 11 in *federal* courts. Thus, *McCarthy* should not be read as imposing upon state courts a formalis-

tic litany of questions for the entry of a valid plea. State courts are, however, bound by the more general dictates of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which is generally held to require an affirmative showing that the plea was knowingly, voluntarily and intelligently entered.

sel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, see *Brady v. United States, supra,* 397 U.S. at 751–752, 90 S.Ct. at 1470–1471, or by contesting all guilt, see *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, such as unconstitutional grand jury selection procedures, might be factually supported.

411 U.S. 267–68, 93 S.Ct. 1608. Thus, Petitioner may not rely on the mere fact that some portion of the criminal proceedings surrounding his plea may have been constitutionally infirm. He must show that these infirmities, or other factors present prior to and during the entry of his plea, rendered the plea less than a knowing, voluntary and intelligent admission of guilt.

### THE ILLEGALLY OBTAINED STATEMENT AND PETITIONER'S "FAILURE TO ADMIT"

■ When Petitioner Thundershield was first located by Bureau of Indian Affairs policemen, he was serving a jail sentence for a tribal ordinance violation in Ft. Yates, North Dakota. A statement given by Petitioner's wife, Cecilia Thundershield, caused officers Harry Gayton and Calvin Yellowrobe to suspect Petitioner of the murder of Paul Raymond Gilchrist, and when they located Petitioner in Ft. Yates, they sought a statement from him. Although the *Miranda* warnings were given, it is not clear from the record whether Petitioner waived his right to consult with an attorney prior to giving the statement which set forth his version of the facts leading to Gilchrist's death. The Court is of the opinion that the record, as supplemented, fails to show the waiver of the right to consult with an attorney under the appropriate federal standards. *Williams v. Brewer,* —— U.S. ——, at —— – ——, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

■ The mere fact that the "confession" was illegally obtained, however, is not dispositive of this case. The Supreme Court's decisions in *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), clearly stand for the proposition that a plea stemming from an involuntary confession is not, for that reason alone, invalid. If the defendant has received the reasonably competent advice of counsel, and has made an intelligent choice to plead guilty, the plea is valid notwithstanding the prior confession. As the Supreme Court noted in *McMann*:

A more credible explanation for a plea of guilty by a defendant who would go to trial except for his prior confession is his prediction that the law will permit his admissions to be used against him by the trier of fact. At least the probability of the State's being permitted to use the confession as evidence is sufficient to convince him that the State's case is too strong to contest and that a plea of guilty is the most advantageous course. Nothing in this train of events suggests that the defendant's plea, as distinguished from his confession, is an involuntary act. His later petition for collateral relief asserting that a *coerced* confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act. The Constitution, however, does not render pleas of guilty so vulnerable.

As we said in *Brady v. United States,* [*ante*], at 756–757, 90 S.Ct. at 1473–1474, the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All perti-

nent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. Courts continue to have serious differences among themselves on the admissibility of evidence, both with respect to the proper standard by which the facts are to be judged and with respect to the application of that standard to particular facts. That this Court might hold a defendant's confession inadmissible in evidence, possibly by a divided vote, hardly justifies a conclusion that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty.

397 U.S. 769–70, 90 S.Ct. 1448.

Petitioner contends that the rationale of *McMann* is limited to those situations in which the defendant admits his guilt at the time of sentencing. He argues that because he did not specifically admit guilt at the time of sentencing or entry of the plea,[5]

5. The state court transcript of arraignment and sentencing reveals the following colloquy:

BY THE COURT: Are you satisfied that he died by an act of yourself?
BY THE DEFENDANT: (No response)
BY THE COURT: Are you satisfied he died as a result of some act you did?
BY THE STATE'S ATTORNEY: Your Honor, for point of clarification I might point out that Mr. Thundershield's confession to I think Calvin Yellowrobe and Henry Gayton, he said that he did kick him and that he may have hit him with a tire iron. In other words by his acts, this is what the Judge is wondering. Whether you by your acts, your kicking, hitting him with the tire iron caused his death.
BY THE DEFENDANT: I didn't use any tire iron.
BY THE COURT: But some act, in other words, that at this time the Court must determine that there is a factual basis for this charge, and that factual basis would be that Paul Gilchrist is dead and he is dead as a result of some act you did. Now are you satisfied that he is dead as a result of some act you did, whatever that act was?
BY MR. BROWN: My client doesn't understand, Your Honor. Perhaps the use of the word "act" confuses him.
BY THE COURT: Well did you either hit or kick or strike, or something that nature, Mr. Gilchrist?
BY THE DEFENDANT: Kicked, that's all.

BY THE COURT: And did that act facilitate, or did that act result in his death?
BY THE DEFENDANT: (No response)
BY THE COURT: Did that cause him to be killed?
BY THE DEFENDANT: I don't know.
BY THE COURT: You don't know?
BY THE DEFENDANT: Yes.
BY THE COURT: But at least you are satisfied that he may have died because you kicked him?
BY THE DEFENDANT: Maybe.
In addition, at the time for sentencing Petitioner was questioned about letters sent to the sentencing judge in which he claimed he did not kill Gilchrist. At the sentencing, Petitioner's attorney, Mr. Thurow, introduced a letter in which a sentence amounting to an admission that Petitioner killed Gilchrist had been struck out, presumably by Petitioner himself. Also, at the time of sentencing, Petitioner's counsel read into the record a statement prepared by Petitioner:

I am not intended to kill man named Gilchrist. Death I am not satisfied. I wanted to explain what happened between me and Gilchrist. We all pretty drunk. Gilchrist he was drunk himself and he attacked my wife and he rape her—he tore her panties apart. My wife she screamed for help, so that's where the fight started. I kicked him three times and I was staggering back against the car. Gilchrist, he got up running down the little (sic) and he disappeared in the weeds.

and because the sentencing court may have failed to properly advise him of all elements of the crime to which he pleaded guilty (a contention which will be addressed at a later point), his right to rely on the statement as indicative of a coerced plea is preserved.

Admittedly, the record in this case does not, at any point, indicate that Petitioner specifically admitted killing Gilchrist. This specific admission, however, is not a necessary component of a valid guilty plea. As the Supreme Court noted in *Alford v. North Carolina*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970):

> Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

400 U.S. at 37, 91 S.Ct. at 167.

Petitioner strongly urges that *Alford* should be limited to those situations in which there is strong evidence of guilt.[6] I am not willing to accept this limitation, as I believe the relevant inquiry dictated by *Alford* is not as to the relative strength of the state's case, but as to the motives the defendant has for entering the plea, and the nature of that plea as voluntarily and intelligently made. Here, the motive for the plea was clearly to avoid the possibility of a sentence of death or life imprisonment. This is clearly pointed out in the second paragraph of Mr. Brown's affidavit, submitted for purposes of this proceeding, and the following exchange at sentencing:

> BY THE COURT: Is there any reason why you want to have your plea of guilty

entered even though you deny or do not admit that you killed him?

BY THE DEFENDANT: Well anyway I will plead guilty to that. Well I really don't know that, we were all drunk then.

BY THE COURT: Why do you plead guilty then?

(No response)

BY THE COURT: Do you realize that you could have a jury trial?

(No response)

BY THE COURT: Do you realize that you could have a jury trial?

BY THE DEFENDANT: No.

BY THE COURT: In other words, if you were to plead not guilty you would be entitled to a jury trial, do you realize that?

BY THE DEFENDANT: Yes.

. . . . .

BY THE DEFENDANT: Well I don't know, I will just let it stand.

BY MR. THUROW: Yes, but you have to tell him the reason why you want it to stand. He won't let it stand until you tell him the reason, what the reason is; that the reason is because it is a maximum of 10 years and the other one is a much bigger sentence that you are afraid you might be convicted of. Just tell him that.

BY THE DEFENDANT: Why don't you tell him for me?

BY MR. THUROW: I want it in the record that they are your words.

BY THE COURT: In view of the difficulty the defendant has expressing himself, since you as his attorney have visited with him, why don't you express or explain to the Court is (sic) reasons and I can ask him if those are his reasons.

BY MR. THUROW: Your Honor, the best I understand it, the reason Mr. Thundershield wants to plead guilty to the lesser included crime, even though he

Transcript of Arraignment and Sentence at 43.

6. There is some indication that at least the Second Circuit Court of Appeals would accept this position. In *U. S. ex rel. Dunn v. Casscles*, 494 F.2d 397 (2nd Cir. 1974), the holding in *Alford* was limited to those situations in which

there was a strong factual basis for the plea, based upon either the state's production of the necessary elements of proof, or the derivation of those elements from defendant's own statements at sentencing.

says in his letter and says in court today that he did not kill him, Mr. Gilchrist, is that Mr. Thundershield knows that by pleading guilty here the most he can get for a sentence is 10 years in the penitentiary. The crime that the State would charge him in a jury trial with is first degree murder which could be a life sentence or he could be committed to the electric chair, and he is afraid that if he is tried that there is a reasonable possibility that he would be convicted of first degree murder, and he therefore feels he is better off pleading guilty to second degree manslaughter, which has the maximum of 10 years, than he is at standing a trial for first degree murder, which has the much more severe sentence, and I believe that's what Mr. Thundershield's reason is for insisting that he does not want to withdraw his plea. I request the Court to ask Mr. Thundershield if this is the reason?

BY THE COURT: Did you hear what your counsel had explained as your reason?

BY THE DEFENDANT: Yes.

BY THE COURT: And is that your reason for entering a plea of guilty to this information?

BY THE DEFENDANT: Yes.

BY THE COURT: The plea of guilty will be allowed to stand.

As a further matter, Petitioner was represented by counsel throughout the proceedings. There is no claim made, nor in my view could one be made, that Mr. Brown or Mr. Thurow were less than competent. Mr. Brown's affidavit and the transcript of arraignment and sentencing make clear the fact that the reasons for and consequences of entering the plea of guilty to the lesser charge of manslaughter were thoroughly discussed with Petitioner. As shown in the answer Mr. Brown gave to interrogatories propounded by Petitioner:

It is my understanding the petitioner entered his plea of guilty to manslaughter in the second degree because of the fear of a conviction of a more serious offense, or because of the knowledge of his guilt. The petitioner never made his true feelings known to me, however, the decision of whether or not to enter a plea was his alone.

▆ Standing alone, the existence of an illegally obtained statement, when followed by a plea of guilty, is not a sufficient ground for habeas corpus relief. *Jones v. Cupp,* 452 F.2d 1091 (9th Cir. 1971); *U. S. ex rel. DeFlumer v. Mancusi,* 443 F.2d 940 (2nd Cir. 1971), *cert. denied* 404 U.S. 914, 92 S.Ct. 241, 30 L.Ed.2d 189 (1971); *Devers v. California,* 422 F.2d 1063 (9th Cir. 1970); *Ford v. United States,* 418 U.S. 855 (8th Cir. 1969); *File v. Smith,* 413 F.2d 969 (5th Cir. 1969). Nor does Petitioner's failure to specifically admit killing Gilchrist, even in combination with the questionable statement, invalidate the plea. *Roddy v. Black,* 516 F.2d 1380 (6th Cir. 1975); *Moore v. Swenson,* 487 F.2d 1020 (8th Cir. 1973); *Langdeau v. State of South Dakota,* 446 F.2d 507 (8th Cir. 1971); *Oaks v. Wainwright,* 445 F.2d 1062 (5th Cir. 1971), *cert. denied* 405 U.S. 995, 92 S.Ct. 1271, 31 L.Ed.2d 464 (1972); *Clark v. Lockhart,* 379 F.Supp. 1320 (E.D.Ark.1974), *aff'd* 512 F.2d 235 (8th Cir. 1975); *Meeks v. Swenson,* 356 F.Supp. 1174 (E.D.Mo.1973). I am convinced that the pertinent inquiry focuses on whether the Petitioner voluntarily and intelligently concluded that a plea of guilty to the lesser charge was the most advantageous course for him. No doubt Petitioner was required to give some thought to whether he and his counsel felt the statement given to the BIA policemen would be admissible,[7] but I do not think this consideration overcame the voluntary and intelligent nature of the plea.

Accordingly, the Court finds that the plea of guilty was not entered in deference to the possibly illegal statement given to the

---

**7.** Mr. Brown, Petitioner's attorney, indicates in his affidavit that his primary concern was that the statement would be used to impeach Thundershield if he chose to testify in his own behalf. In light of *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), this would appear to have been an accurate assessment.

BIA policemen; rather, it represented a voluntary choice to plead guilty to the lesser charge of manslaughter and avoid the possibility of a sentence of death or life imprisonment.

## THE FAILURE TO PROPERLY ADVISE PETITIONER OF THE ELEMENTS OF THE CRIME TO WHICH HE PLEADED

The most serious questions raised in this petition are whether Thundershield was properly advised of the elements of the crime of second degree manslaughter, and whether the failure to do so, if there was such a failure, invalidates the plea as less than intelligently made. Petitioner's primary contention in this regard is that the sentencing judge described the elements of the offense of second degree manslaughter once, and, when Petitioner indicated that he did not understand these elements, failed to include the fact that the crime charged did not comprehend justifiable or excusable homicide in his second explanation to Petitioner.[8]

The record before this Court indicates the following exchange took place:

BY THE COURT: . . . The elements of this offense, that which the state would have to prove, are alleged in the information. That you, by your own act, procurement or culpable negligence, in other words one of those three ways, you killed another human being, that human being, being Paul Raymond Gilchrist. In other words by your act you killed somebody, or by your procurement you killed somebody, or by culpable negligence you killed somebody. Whichever of those three would apply, and of course such killing would not be justifiable. In other words, you had no authority of law, no other legal reason to kill him, and of course it's not such as would be first

degree, just plain murder, which I have previously explained, or it wouldn't be first degree manslaughter. Now that's quite lengthy, do you have any questions concerning what the elements of this offense are?

BY THE DEFENDANT: (No response)

BY THE COURT: Do you have any questions?

BY THE DEFENDANT: No, I don't understand.

BY THE COURT: Do you have any questions to ask the Court, to ask me, to help you further understand this provision?

BY THE DEFENDANT: No.

BY THE COURT: Do you understand it?

BY MR. BROWN: My client indicates that he does not understand Your Honor.

BY THE COURT: Okay. What is the extent of your education?

BY THE DEFENDANT: Fourth grade.

BY THE COURT: Okay, the offense charged is second degree manslaughter, that's its common name, that's what we refer to it as commonly, and to have committed that crime you must have done certain things which the State must prove and that is, that you killed Paul Raymond Gilchrist by your own act. That would be one way of proving it. Now there is other words the statute uses, or by your procurement. You didn't directly, but some way indirectly; or culpable negligence. I doubt if that is what the State is after, but it could be; but any one of those three, by your act, by your procurement, or by your culpable negligence you killed Paul Raymond Gilchrist. That is what the State would have to prove. Now do you understand that?

BY THE DEFENDANT: Yes.

---

**8.** Petitioner argues that his version of the facts, as shown by the statement he gave to the BIA policemen, clearly shows the killing to have been justifiable homicide. Justifiable homicide is defined as follows:

Homicide is justifiable when committed by any person in the lawful defense of such person, *or of his or her husband, wife* . . . when there is reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished. S.D.C.L. section 22–16–35 (1967).

Transcript of Arraignment and Sentencing at 15–16. The statutory definition of second degree manslaughter clearly excludes justifiable or excusable homicide:

> Every killing of one human being by the act, procurement, or culpable negligence of another which, under the provisions of this chapter, is not murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree.

S.D.C.L. section 22–16–20 (1967). Petitioner actually makes two contentions in this regard: first, that the lack of excuse or justification is a necessary element of the crime of second degree manslaughter, and secondly, even if justification or excuse is solely a matter of defense, the Supreme Court's ruling in *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), would require an explanation of those elements before a plea could be intelligently entered.

The Supreme Court of South Dakota characterizes the matters of excusable and justifiable homicide, not as elements of the offense of second degree manslaughter, but rather as matters of defense. *State v. Zemina*, 206 N.W.2d 819 (S.D.1973); *State v. Johnson*, 81 S.D. 600, 139 N.W.2d 232 (1965). In *State v. Reddington*, 80 S.D. 390, 125 N.W.2d 58 (1964), however, it was noted that if the state's case shows circumstances of justification or excuse, those circumstances must be overcome by proof indicating the contrary. *See also State v. Staley*, 56 S.D. 495, 229 N.W. 373 (1930). Petitioner argues that his case falls within the circumstances delineated in *Reddington*, because the state would have to use his statement to obtain a conviction, and the statement clearly showed justification. This is highly speculative at best. Certainly, if the statement had been illegally obtained, it

could not have been used. Further, the state might have used other evidence [9] to rebut Petitioner's version of the events at Mina Lake.

■ Since Petitioner was assisted by counsel, there is a presumption that matters of justification and self-defense were explained to him, and that the plea was valid. *Winford v. Swenson*, 517 F.2d 1114 (8th Cir. 1975); *Weaver v. State of Texas*, 474 F.2d 1135 (5th Cir. 1973); *Langdeau v. State of South Dakota*, 446 F.2d 507 (8th Cir. 1971); *U. S. ex rel. Cummings v. McMann*, 429 F.2d 1295 (2nd Cir. 1970); *U. S. ex rel. Ward v. Deegan*, 310 F.Supp. 1076 (S.D.N.Y.1970).

■ Petitioner asserts, however, that even if justification was strictly a matter of defense, the recent ruling in *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), requires the explanation of this type of affirmative defense. I cannot agree. The *Henderson* case dealt specifically with a factual situation in which the defendant had not been advised that intent to effect the death of the victim was a necessary element of the offense. Clearly, the requirement of that intent gives rise to various defenses, as is the case here. In *Henderson*, however, the Court explicitly noted that not every element of the offense, much less every possible affirmative defense, must be described by the trial judge:

> There is no need in this case to decide whether notice of the true nature, or substance of a charge always requires a description of every element of the offense; we assume it does not.

426 U.S. at 647, n. 18, 96 S.Ct. at 2258, n. 18.

Other factors, some of them noted by the *Henderson* Court, also indicate that the Petitioner was fully apprised and aware of the possible defense. Foremost among these is

---

**9.** At page 6 of the Transcript of Preliminary Hearing, Mr. Clark, the sheriff of Edmunds County, testified that Gilchrist's belt was buckled and his pants were zipped, testimony which would seem to rebut Petitioner's contentions of an attempted rape. In addition, Petitioner's wife gave a statement which led to the initial arrest of Petitioner. Those factors certainly do not indicate that there was a strong case against Thundershield, and this may have led to the plea agreement. To say at this point, however, that the state's case would necessarily include evidence showing justification is highly speculative.

the presence of counsel. As was noted in *Henderson*:

> Normally the record contains either an explanation of the charge by the trial judge or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

426 U.S. at 647, 96 S.Ct. at 2258. Both of the circumstances noted by the Court in *Henderson* were present here. The elements of the offense were explained by the trial judge twice at the time of sentencing. Although the second explanation, which came after Petitioner indicated he had not understood the first, omitted reference to justifiable homicide, Petitioner's attorney represented to the sentencing court that he had gone over the matter, including possible defenses, with Petitioner. This representation has been maintained in the proceedings in this Court by way of affidavit, and I find specifically that Petitioner was advised of the possible defenses by his attorney. In addition, there was an interim between the plea and sentencing during which time the Petitioner sent a letter to the sentencing judge claiming he had not killed Gilchrist. When the sentencing judge offered Petitioner the chance to withdraw his plea, Petitioner declined to do so, after conferring with his attorney.

Finally, this Court is not unaware that Petitioner was no stranger to legal proceedings. In *State v. Thundershield,* 83 S.D. 414, 160 N.W.2d 408 (1968), the South Dakota Supreme Court dealt with a factual situation involving this Petitioner, so startlingly similar to that before this Court that it cannot be ignored. More importantly, in that case Petitioner stood trial and interposed a defense identical to that which he claims he was not aware of in the instant case. His claim of ignorance simply is not credible.

## THE CLAIMED INABILITY TO UNDERSTAND ENGLISH

Throughout the proceedings in this Court, Petitioner has maintained that at all relevant times he had a barely minimal comprehension of the English language. The record before the Court supports this assertion, at least partially. Petitioner's attorney at the time of arraignment, plea and sentencing, however, indicates by way of affidavit that, although there were some difficulties in communication, he was satisfied that Thundershield understood the matters explained to him.

Petitioner has, I think, established that he has difficulty with the English language. He has not, however, established that he could not comprehend the advice his attorney gave. The only evidence of this would be Petitioner's own self-serving statements, submitted by way of affidavit, and I do not find them to be credible. *See Faught v. Cowan,* 507 F.2d 273 (6th Cir. 1974), *cert. denied* 421 U.S. 919, 95 S.Ct. 1583, 43 L.Ed.2d 786 (1975); *U. S. ex rel. Ward v. Deegan,* 310 F.Supp. 1076 (S.D.N.Y.1970). The mere fact that a criminal defendant may have a limited ability to understand the proceedings against him does not thereby render him immune to criminal process, nor does it require court and counsel to do the impossible in assessing his state of mind. *See Oaks v. Wainwright,* 445 F.2d 1062 (5th Cir. 1971), *cert. denied* 405 U.S. 995, 92 S.Ct. 1271, 31 L.Ed.2d 464 (1972); *U. S. ex rel. Crossman v. Pate,* 440 F.2d 535 (7th Cir. 1971); *Ashby v. Cox,* 344 F.Supp. 759 (W.D.Va.1972); *Reyes v. Slayton,* 341 F.Supp. 926 (W.D.Va. 1972).

Of particular importance here, was the presence of counsel at the time of arraignment, plea and sentencing. Mr. Brown, Petitioner's court-appointed counsel, has indicated by way of affidavit that all elements of the case were explained to Petitioner, that he felt Petitioner understood everything related to him, and that the decision to plead to the lesser charge was Mr. Thundershield's. The Court finds that

Petitioner's limited comprehension of English did not deprive the plea of its knowing and voluntary character, especially in light of the presence of counsel, *see Winford v. Swenson,* 517 F.2d 1114, 1118 (8th Cir. 1975); *Redus v. Swenson,* 468 F.2d 606 (8th Cir. 1972), *cert. denied* 411 U.S. 933, 93 S.Ct. 1906, 36 L.Ed.2d 393 (1973); *Brewer v. Peyton,* 431 F.2d 1371 (4th Cir. 1970), *cert. denied* 401 U.S. 994, 91 S.Ct. 1239, 28 L.Ed.2d 533 (1971), and Petitioner's previous involvement in criminal proceedings. *See U. S. ex rel. Burke v. Erickson,* 315 F.Supp. 476 (D.S.D.1970), *cert. denied* 400 U.S. 1011, 91 S.Ct. 2198, 29 L.Ed.2d 434 (1970).

### CONCLUSION

The Court specifically finds that the guilty plea attacked here was knowingly, voluntarily and intelligently made. None of the defects which Petitioner alleges were present at the time of plea and sentencing deprive the plea of its binding effect and validity. I am convinced that Petitioner entered the plea, with the competent advice of counsel, primarily to avoid the possibility of a sentence of death or life imprisonment if he stood trial on the charge of murder. I have no doubt that Petitioner's counsel's advice was within the range of competence required. As the court noted in *Devers v. California,* 422 F.2d 1263 (9th Cir. 1970):

> It is, of course, one of an attorney's most valuable functions to persuade his client to take that course which, to the attorney, in the light of his experience, appears to be the wisest.

422 F.2d at 1264. I think the Eighth Circuit accurately characterized this case in *State of Missouri v. Turley,* 443 F.2d 1313 (8th Cir. 1971):

> The plea is not involuntary where the decision to plead is a calculated move on the defendant's part to avoid what he considered a worse fate. . . . The Constitution does not bar imposition of a prison sentence upon an accused who, when faced with grim alternatives, is

willing to waive his trial and accept the sentence.

443 F.2d at 1317. (citations omitted).

The above shall constitute the Court's findings of fact and conclusions of law. The petition for a writ of habeas corpus is denied, and counsel for the Respondents is directed to prepare an appropriate order.